332 F.2d 987
 The STATE OF MONTANA, By and Through the Attorney General of the State of Montana, Forrest H. Anderson, Edward Ellsworth, Warden of the Montana State Prison, Respondents and Appellants,
v.
John J. TOMICH, Petitioner and Appellee.
 No. 19021.
 United States Court of Appeals Ninth Circuit.
 June 10, 1964.
 Rehearing Denied August 4, 1964.
 
 1
 Forrest H. Anderson, Atty. Gen. of Montana, and Donald A. Garrity, Asst. Atty. Gen. of Montana, Helena, Mont., Donald J. Beighle, Powell County Atty., Deer Lodge, Mont., for appellants.
 
 
 2
 R. Lewis Brown, Jr., Butte, Mont., for appellee.
 
 
 3
 Before POPE and HAMLEY, Circuit Judges, and KILKENNY, District Judge.
 
 KILKENNY, District Judge:
 
 4
 At the conclusion of a full dress hearing, in a habeas corpus proceeding, the trial court ordered that the appellee be discharged from the custody of the Warden of the Montana State Prison, unless the State of Montana within ten days from that date granted appellee a new trial. From that order, the appellants prosecute this appeal.
 
 
 5
 In the court below, the appellee challenged the validity of his confinement on two grounds:
 
 
 6
 (1) That certain evidence used against him during the course of the trial, was obtained by an unlawful search and seizure in violation of the provisions of the Fourth and Fourteenth Amendments to the Constitution of the United States.
 
 
 7
 (2) That appellee, due to the ineffectiveness of counsel, was denied a fair trial as guaranteed by the Sixth Amendment.
 
 
 8
 The trial court found in favor of appellee on both points.
 
 
 9
 The judgment is affirmed on our holding that the findings of the trial court on the search and seizure are not clearly erroneous. We do not reach the second point.
 
 
 10
 Appellee was convicted in the district court of the State of Montana of the crime of burglary in the first degree. His applications for relief to the district and supreme courts of the State of Montana were denied and his remedies under Montana law were exhausted prior to the filing of this proceeding. The Montana courts, in the post-conviction proceedings, refused an inquiry into the search and seizure on the ground that no timely or other motion, for the suppression of such evidence, was made prior to the original trial.
 
 
 11
 A threshold question is whether the lower court properly entertained jurisdiction. That jurisdiction of the federal courts, on habeas corpus proceedings, is not affected by procedural defaults incurred by an applicant during the state court proceedings, is settled by Fay v. Noia, 372 U.S. 391, 438, 83 S.Ct. 822, 9 L.Ed.2d 837. For that matter, a federal court, under these circumstances, has a very limited discretion to deny relief. Such discretion is "narrowly circumscribed" to a state of facts showing that an applicant has deliberately bypassed the orderly procedure of the state courts. Fay v. Noia, supra, 372 U.S. p. 438, 83 S.Ct. 822.
 
 
 12
 Supporting the judgment of the lower court art the following facts: On an early October morning in 1959, appellee was sitting in an automobile parked off the main highway between Warm Springs and Anaconda, Montana. A county sheriff and his deputy, at said time, were enroute to Warm Springs and noticed the automobile at the side of the road. They stopped to investigate. The deputy recognized the appellee as a person with a known criminal record and invited the appellee to approach the sheriff's automobile. Checking, by radio, on the ownership of the car, the sheriff determined that it belonged to appellee, who thereupon returned to his vehicle. The sheriff and deputy proceeded to Warm Springs. During the stop both the deputy and the sheriff questioned appellee as to what he was doing and he told them he was resting, and would like to get on his way. Appellee asked, "Are you through with me", and one of the officers answered, "Yes, we are." After which he returned to his automobile and the officers drove on to Warm Springs.
 
 
 13
 Returning to Anaconda, the officers noticed appellee driving toward them on the highway. The deputy suggested that they stop him and ask him about his driver's license. The officers claimed to have information that appellee didn't have a driver's license. The deputy turned his car on the highway and signalled appellee to stop. The sheriff asked appellee for his license. When the sheriff returned he said, according to the deputy's testimony, "I placed Mr. Tomich under arrest. We will take him back to Anaconda and run him through court on having no driver's license." At appellee's request the parties drove to Opportunity so that appellee might see his aunt. There was no one home. The deputy asked if they could look into the trunk of appellee's automobile and he said, "Yes, you can." As they walked toward his automobile, appellee said, "I don't have a key, so you can't open it." He had the key in his shoe. The officers then followed appellee into Anaconda where they called on the city police to open the trunk. They failed to find a key which would accomplish the purpose. To this point, the testimony of the deputy sheriff and the testimony of the appellee is in substantial agreement. As to what occurred at the time the trunk was opened there is complete disagreement. The deputy testified that they again asked permission to open the trunk and that appellee consented. The deputy says this consent was given in the presence of the mechanic, the chief of police, the sheriff and himself. The others were not called as witnesses. Consent is denied by the appellee. The issue was resolved against appellants. The trunk was finally opened by a garage mechanic, who took the door handle from the car to a key shop where a key was made. Found in the trunk was a certain bag of tools on which was a "real sweet smell" which led the officers to a burglary in Great Falls where several bottles of perfume had been broken. The evidence found in the search was used in appellee's trial and conviction.
 
 
 14
 The officers did not have a search warrant and from all of the facts it is quite clear that they had no probable cause on which to obtain a warrant. No contention is made that the search was incidental to a lawful arrest. The trial court held, and we agree, that such a contention could not be sustained. The evidence clearly shows that the arrest was a cover-up to enable the officers to search the car.
 
 
 15
 Conceding most of the foregoing, the appellants earnestly urge that appellee consented to the search. A search and seizure may be made without a search warrant if the individual freely and intelligently gives his unequivocal and specific consent to the search, uncontaminated by any duress or coercion, express or implied. The state has the burden of proving by clear and positive evidence that such consent was given. Channel v. United States, 285 F.2d 217 (9th Cir. 1960); Pekar v. United States, 315 F.2d 319 (5th Cir. 1963); McDonald v. United States, 307 F.2d 272 (10th Cir. 1962).
 
 
 16
 Appellants recognize the application of the above rule to a criminal action. They would avoid the rule's effect by urging that it is not applicable in this habeas corpus proceeding, which is civil in nature.
 
 
 17
 The law is otherwise. A state court finding of consent does not bar an independent determination of that question in federal court in a habeas corpus proceeding. A waiver affecting federal rights is a federal question. Rice v. Olson, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367; Fay v. Noia, supra, 372 U.S. p. 439, 83 S.Ct. 822. The lower court found against appellants on the issue of consent and that finding is supported by substantial evidence.
 
 
 18
 The judgment of the lower court is affirmed.