## BLAIR EUGENE SHELTON *v.* STATE OF MARYLAND

[No. 133, September Term, 1967.]

*Decided March 20, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*John J. McBurney* for appellant.

*Edward R. Jeunette, Special Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Howard S. Chasanow, Deputy State's Attorney for Prince George's County,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

The appellant, Blair Eugene Shelton, was convicted on January 17, 1967 of two counts of storehouse breaking and two counts of larceny by a jury in the Circuit Court for Prince George's County, and sentenced to ten years in the Maryland Penitentiary on each count, the sentences to run concurrently. On this appeal the appellant contests the legality of his arrest and the admissibility of evidence seized incident thereto, the sufficiency of the evidence to sustain his conviction, and the propriety of the trial judge's ruling disallowing his request to summon certain witnesses to testify in his behalf.

There was evidence adduced at the trial showing that in the early morning hours of February 1, 1965, at approximately 4:00 a.m., Officer Charles Roberts of the Prince George's County Police Department was driving his police cruiser on Ager Road in the County when he observed an automobile backing into a parking space across the road from the Green Meadows Shopping Center in such a position "where it could observe the store fronts of the shopping center." Officer Roberts continued down the road to assist an officer in another matter, but returned to the Green Meadows area between five and ten minutes later. He checked the rear of the stores in the shopping center, after which he pulled parallel to the car he had previously noted across from the shopping area, and approached the vehicle on foot. The officer tapped on the window of the car since it was covered with frost. The occupant mumbled something unintelligible, and Officer Roberts asked to see his driver's license and registration card. At this point, the vehicle started up and speeded away, running a stop sign at Ager Road, and turning onto the East-West Highway, weaving from side to side on the roadway. Officer Roberts pursued and observed the automobile run a red light before he was able to stop it. The driver of the car, identified at the trial as the appellant, was ordered out of the car and arrested for the various traffic violations. The appellant at that time identified himself to Officer Roberts as Larry Rogers; however, Detective James Ross, who arrived at the scene shortly after appellant's arrest, recognized him to be Blair Eugene Shelton. After Detective Ross' arrival and identification, Officer Roberts looked into the automobile through the open door on the driver's side and observed a walkie-talkie

radio unit lying on the front seat. The car was then searched, and the radio seized. The officers, together with the appellant, then returned to the shopping center, driving around to the rear of the stores, where they observed an individual run from the rear door of the Melody Cleaners store. The officers gave chase, whereupon Detective Ross discovered William Blake lying in some brush in the wooded area directly behind the store. On the ground beside Blake, Detective Ross discovered approximately $373.00 in currency and numerous checks, some of which were payable to the Riggs Manor Pharmacy. In that same area, Detective Ross also found a walkie-talkie radio of the same make as that taken from the appellant. The two radios bore serial numbers 23419 and 23420 respectively, and it was demonstrated at the trial that communication was able to be sustained between them. Both walkie-talkie sets were introduced into evidence at the trial over appellant's objection.

Bernard Prensky, the owner of the Riggs Manor Pharmacy in the Green Meadows Shopping Center, testified at the trial that on February 1, 1965 a hole had been made in the party wall separating his establishment from Melody Cleaners, that the safe in his store had been broken into, and that about $1900.-00 in cash and checks had been taken. George Rollins, owner of the Melody Cleaners, testified with respect to the hole in the wall, and further testified that the glass in the skylight of his place of business had been broken and the bars thereon removed. He also stated that the latches on the rear door had been broken and that about $195.00 in cash was missing.

At the conclusion of the State's case the appellant stated in his own behalf that he wished to call three witnesses in his defense. Appellant's counsel, however, declined to have these witnesses subpoenaed, as he believed that their testimony would be harmful. The trial judge expressed the view that matters of trial tactics were solely within the discretion of defense counsel and that he would not allow the appellant to dictate the defense of his case. The defense thereupon rested its case without calling any witnesses in its behalf.

Appellant's principal contention is that the search of his vehicle which resulted in the seizure of his walkie-talkie radio was

illegal and that the radio, being the fruit of that search, was improperly received in evidence below. We disagree.

While Officer Roberts did not have probable cause to believe that appellant had committed a felony at the time he arrested him, the arrest was nevertheless lawful since it was based upon multiple misdemeanors committed in the officer's presence, namely the numerous violations of the motor vehicle laws of this State. See *Braxton v. State,* 234 Md. 1; *Jenkins v. State,* 232 Md. 529; *Dixon v. State,* 1 Md. App. 623; *Crumb v. State,* 1 Md. App. 98. As a general rule, where the arrest is lawful, the officers have a right to conduct a contemporaneous search incident thereto, both of the person of the arrestee, and of the property under his immediate control, including the motor vehicle which he was operating at the time of his arrest. *Knotts v. State,* 237 Md. 417; *Lewis v. State,* 2 Md. App. 678; *Barton v. State,* 2 Md. App. 52; *Musgrove v. State,* 1 Md. App. 540; *Gaudio v. State,* 1 Md. App. 455; *Stokes v. State,* 1 Md. App. 253. It has been held, however, that a police officer is not authorized to conduct a general search every time he stops a motorist for an ordinary traffic infraction. *People v. Marsh,* 228 N. E. 2d 783 (N. Y.); *Lane v. Commonwealth,* 386 S. W. 2d 743 (Ky.); *People v. Thomas,* 201 N. E. 2d 413 (Ill.) *cert. den.* 380 U. S. 936; Annotation, 10 A.L.R. 3d 314-354 ("Lawfulness of Search of Motor Vehicle Following Arrests for Traffic Violation"). This limitation — distinguishing between motor vehicle misdemeanors and other misdemeanor violations of the criminal laws—has not as yet been afforded any recognition by the Court of Appeals of Maryland. See *Braxton v. State, supra,* and *Jenkins v. State, supra.* We note, however, that the limitation on the right of the police to conduct a search incident to a full custody arrest for a minor motor vehicle offense, is principally based upon the proposition that, ordinarily, there are no fruits or implements of a traffic offense for which to conduct a search. See *Grundstrom v. Beto,* 273 F. Supp. 912, and cases there cited. But one of the traditional justifications for permitting a search incident to an arrest is the need of the police to seize weapons and other objects that might be used to assault an officer or effect an escape. *Preston v. United States,* 376 U. S. 364; *Lewis v. State, supra; St. Clair v. State,* 1 Md.

App. 605. While some courts have seen fit to speculate that there is no real need to search the ordinary traffic offender or his vehicle for weapons or other objects useful in facilitating an escape (see *People v. Marsh, supra*), we are mindful, and are made more so each day, of those mounting cases where an officer is subjected to an attack by a motorist while investigating routine or minor traffic violations. We are persuaded that where a traffic offender is subjected to a full custody arrest, it is not *per se* unreasonable to search his person and, within limits, his vehicle for weapons or for means of escape. See *Barnes v. State*, 130 N. W. 2d 264 (Wis.); *People v. Mayo*, 166 N. E. 2d 440 (Ill.); *People v. Gonzales*, 97 N. W. 2d 16 (Mich.). In determining, therefore, whether a search for weapons or means of escape is valid following a full custody arrest for a traffic offense, we think the test to be applied is one of reasonableness, *viz.*, whether, under all of the circumstances, the officer had reasonable grounds to believe that a search was necessary for his own safety or to prevent an escape.

The record before us discloses gross violations of the motor vehicle laws committed by the appellant in the dead of night and against a background giving rise to a reasonable suspicion on the part of the arresting officer that the driver of the vehicle had been positioned in the shopping center area as a look-out for some criminal enterprise, quite possibly burglary. When appellant refused to produce his driver's license and registration card, as requested by Officer Roberts, he violated Sections 31, 97 and 181 of Article 66½ of the Maryland Code (1967 Repl. Vol.), each of which is constituted a misdemeanor by Section 338. When appellant ran through the several traffic control devices, he violated Section 192 and, in view of the testimony, his erratic driving was such as to undoubtedly constitute reckless driving within the meaning of Section 209. And when, after his arrest, he gave the police a false identification, he again violated the pertinent provisions of the motor vehicle Code of this State. Appellant makes no contention that, under these circumstances, he had a right, as a Maryland resident, to a summons and was not, therefore, subject to a full custody arrest. See Code, Article 66½, Sections 321, 324. Whether viewed separately or collectively, the motor vehicle violations

committed by the appellant cannot be characterized as routine or minor infractions; and we think, on the facts of this case, that it would have been the utmost in folly had the arresting officer not been concerned with his own safety, or with the security of his prisoner, who had already demonstrated a propensity to go to extreme ends to evade the police. That the officer was concerned with these factors is shown by the fact that he searched the person of the appellant at the time of the arrest. The walkie-talkie radio unit was in plain sight within the vehicle and readily accessible to the appellant at the time of his arrest. That it could have been used not only to effectuate an escape by summoning assistance for that purpose, but also as a weapon with which to assault the arresting officers, is too clear to require extended discussion. The taking of the radio did not involve a search in the usual sense of that term, *Nestor v. State*, 243 Md. 438; *St. Clair v. State, supra; Dixon v. State, supra,* and we hold that its seizure, substantially contemporaneous with the arrest, was entirely lawful and justified on the facts of this case by the need of the police to take into custody weapons or implements that the appellant might have used to harm the officers or make an escape.

Appellant further contends that the lower court erred in admitting the walkie-talkie radio seized from his car into evidence because it was not relevant to any issue in the case. As heretofore indicated, there was evidence showing that on the night of the burglaries, appellant had been seen in the area of the burgled stores parked in a position from which he could act as a look-out, that he had fled from the police when they sought his identity, that he had a walkie-talkie radio in his possession when arrested that night, and that shortly thereafter, the police caught William Blake in the proximity of the burgled stores with some of the fruits of the burglaries in his possession and with a walkie-talkie radio of the same make as that taken from appellant, bearing a serial number consecutive with that of appellant's radio. There was evidence that communication could be sustained between the two radios, which tended to indicate that the radios constituted a means or instrumentality used in the commission of the crimes.

It is, of course, well established that evidence need not be

positively connected with the accused or the crime committed in order to render it admissible; it is admissible where there is a probability of its connection with the accused or the crime, the lack of positive identification affecting the weight of the evidence, rather than its admissibility. *Woodell v. State,* 2 Md. App. 433; *St. Clair v. State, supra.* That there was a probability of connection between the appellant, his radio, and the crimes is, we think, abundantly clear and we find no error in the admission of the radio into evidence.

At the trial, the appellant expressed a desire to call three witnesses in his defense: (1) William Blake, a co-defendant, ostensibly to prove that there was no connection between him and the appellant; (2) a representative of the firm manufacturing the walkie-talkie radios, to establish that more than two radios work on the same frequency; and (3) the police officer who was cruising with Officer Roberts, to prove that the walkie-talkie taken from appellant's car had been situated under the seat, rather than on it as Officer Robert's testimony indicated. Defense counsel, however, declined to call these witnesses, believing that Blake was not a credible witness, that bringing in a radio manufacturer's representative would unduly emphasize the radios as evidence, and that the officer's testimony would not be beneficial to his client. The trial judge stated that the calling of these witnesses was a matter of trial tactics committed to the judgment of defense counsel and that he should control presentation of the defense. The witnesses were not called, and the defense rested.

The decision whether to call a witness is ordinarily a matter of trial tactics within the discretion of defense counsel. *Johns v. Warden,* 240 Md. 209. Furthermore, where a party is represented by counsel, he is not entitled as a matter of right to examine witnesses or otherwise participate in the conduct of his trial. *Strosnider v. Warden,* 245 Md. 692. We think the record indicates that defense counsel had valid reasons for not calling the witnesses suggested by his client, and we see no error under the circumstances of this case in the court's action.

Appellant next contends that the evidence was insufficient to support his convictions for grand larceny in that it was not established that amounts in excess of $100.00 were taken from

each store. We cannot agree. Mr. Prensky, owner of the burglarized pharmacy, testified that the night before the burglary about $1900.00 was in his store, that about $500.00—$600.00 belonged to a money order agency, but that the rest belonged to him. He further testified that only about $65.00 remained in the store when he discovered that it had been burglarized. Mr. Rollins of the Melody Cleaners testified that about $195.00 was missing from his store, and that the entire sum belonged to him. It was also established that when William Blake was apprehended near the stores, about $373.00 in currency and checks, some of which were made payable to cash, and some of which were made out to the Riggs Manor Pharmacy, was found on the ground where he had been lying. In our view the record clearly supports the proposition that over $100.00 was taken from each store as a result of the burglary.

The final contention raised by the appellant is that his convictions for larceny were improper as they merged into his convictions for storehouse breaking. Appellant confuses his conviction of storehouse breaking with the offense of breaking and stealing, citing *Tucker v. State,* 237 Md. 422, and *Crowe and Williston v. State,* 240 Md. 144, both cases holding that conviction of both breaking and stealing and common law larceny, arising out of the same alleged acts, was improper. In the instant case, however, the appellant's convictions were for storehouse breaking with intent to steal and larceny. That these offenses do not merge is entirely clear. See *Tender v. State,* 2 Md. App. 692, footnote 5, at page 700.

*Judgment affirmed.*