**UNITED STATES of America**

v.

**Carlisle B. MASON.**

**Crim. A. No. 6872.**

United States District Court
D. New Hampshire.

Sept. 26, 1968.

844

Louis M. Janelle, U. S. Atty., Concord, N. H., for plaintiff.

Alfred J. Cirome, Schiavoni, Cirome & Mooradian, Haverhill, Mass., for defendant.

## ORDER GRANTING MOTION TO SUPPRESS

BOWNES, District Judge.

Upon indictment charging him with violation of the Dyer Act, Title 18, United States Code, Section 2313 (receipt of stolen vehicles), the defendant brings this motion to suppress as evidence against him two automobiles and two bills of sale allegedly taken from him without a search warrant in violation of his fourth amendment rights. Fed. R.Crim.P. 41(e).

## UNCONTRADICTED FACTS

The following facts are established by stipulation of the parties and on the basis of uncontested testimony. On June 23, 1966, as part of a general investigation of all used car dealers in the Salem, New Hampshire area, Donald Scott, an F. B. I. Agent, William Yetman, an agent of the National Auto Theft Bureau (a private agency), and Trooper Arthur Jowett, a Massachusetts State Policeman, entered the business premises of the defendant, a garage operator and used car dealer, for the purpose of questioning him and examining the motor vehicles on his premises. None of the investigators (referred to hereinafter as "officers") wore a uniform. Record (Scott) at 15. This investigation was the by-product of a series of stolen car cases originating in the Commonwealth of Massachusetts. While at the defendant's garage, the three officers examined between four and six automobiles, two of which were the property of the defendant's customers and were at the garage for repairs, and the others purportedly belonged to the defendant. Record (Scott) at 18–20. Upon opening the door of at least one car, it was determined by visual inspection that the door-frame vehicle identifying plate was affixed in a non-factory manner. Record (Yetman) at 29. That vehicle and at least two others were then removed to an adjacent garage, hoisted by means of a mechanical lift, and the under chassis were examined by Yetman, the agent of the National Auto Theft Bureau. At least one specialized detection instrument and Yetman's expert knowledge were needed to locate, examine, and record the hidden serial or identifying numbers on the under chassis, the location of which are known only to the auto manufacturers and the bureau. Testimony of Mr. Roy at court. See Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L. Ed.2d 1067 (1968); United States v. Nikrasch, 367 F.2d 740 (7th Cir. 1966).

After a discrepancy had been discovered between the door-frame serial number and the hidden under-chassis number on one car, the defendant was advised:

\* \* \* that they were altered numbers on the car \* \* \* [T]hat he had a right to remain silent, and he

had a right to obtain an attorney prior to making any statements or talk to anyone else of his choice. Record (Scott) at 5.

The second car which was ultimately seized was then examined in a similar manner and discrepancies in the serial numbers were found. Yetman then made telephone calls to Massachusetts and determined, to his satisfaction, that at least one car was stolen. The defendant was asked if he held bills of sale for both cars, and he said that he did. The three officers and the defendant then proceeded to the latter's home, where the two bills of sale were produced after "he [Mason] searched through quite a few records that he had * * *." Record (Scott) at 8. The bills of sale were turned over to Agent Scott. Record (Yetman) at 30.

On that day (June 23, 1966), the vehicle, determined after Yetman's telephone calls to have been stolen, was physically taken from the defendant's possession by the Salem, New Hampshire Police, at the direction of Agent Scott. The defendant was ordered by Scott to "hold" the second vehicle, and after two or three weeks that vehicle was also physically taken from the defendant's premises and possession. Record (Mason) at 23. The three officers had no search warrant at any time. The defendant was arrested on May 3, 1967 (more than ten months later), on the basis of the information obtained on June 23, 1966.

## FINDINGS OF FACT

Evidence regarding factual matters in dispute was presented both orally at open hearing and by affidavit. After diligent scrutiny of all papers filed and all available transcripts, and upon the testimony received at a second hearing, it is found by this Court that on June 23, 1966, it was reasonably believed by the defendant (and other non-parties who were lawfully within the defendant's business premises) that the three inquiring officers were authorized law enforcement officers. Further, during the course of the examination of automobiles within the business premises of the defendant, a holstered revolver carried by the Massachustts State Policeman was visible and observed by the defendant (if not during the entire inquiry, at least for a significant portion thereof). The defendant Mason did give verbal permission for the inspection of his business premises and automobiles. However, it is evident from the testimony of Agent Scott that the "permission" was not preceded by a request formulated to apprise the defendant of all of his fourth amendment rights: specifically, he was not informed that the evidence found on or about the premises could be used against him, nor was he told of the general requirement of a search warrant. The record and testimony are resoundingly silent as to any direct statements to the defendant by the officers, explicit, or even tacit, bespeaking or suggesting the notion of consent, voluntariness, or waiver of protected rights.

Factually, it is found that the defendant gave the two bills of sale to the officers with verbal permission to take and hold. However, this permission was given without the same basic constitutional warning prerequisites found lacking in the search of the garage and automobiles. The government's argument to establish the absolute voluntary nature of the defendant's production of the bills of sale, i. e., that he was eager to establish the legitimacy of his purchase of the two automobiles in question, must fail. A person eager to prove his innocence to law enforcement officials who have him "at bay," is by no reason or authority a person capable of knowingly and voluntarily waiving his constitutional rights. The argument of the government implicitly affirms what it explicitly denies, i. e., involuntary action. Evidence of true voluntary permission is essentially lacking. The defendant's verbal permission was, in substance, an unadvised, ill-timed attempt to cooperate with law enforcement officials. Far from evidencing intelligent waiver, the circumstances show that the "permission" was bottomed upon compulsion and duress.

## RULINGS OF LAW

■ In the light of these findings, and in compliance with the principles of fourth amendment protection propounded in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); and Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967), the Court holds, as a matter of law, that the searches of the defendant's business premises, automobiles, and business records violated his fourth amendment protection from unreasonable searches, and, likewise, that the seizures of the two automobiles and two bills of sale are the unreasonable types of seizures proscribed by that amendment.

This Court would be less than candid if it failed to acknowledge that the practical requirements of law enforcement, when challenged by the constitutional requirements of the fourth amendment protection of personal security, pose a most sensitive, troublesome, and, of necessity, awkwardly defined problem of the utmost contemporary significance. Indeed, the Supreme Court has rather bluntly asserted that the trial court must wend its way through this constitutional thicket virtually alone, with very few fixed guidelines.

What is a reasonable search is not to be determined by any fixed formula. The Constitution does not define what are "unreasonable" searches and, regrettably, in our discipline we have no ready litmus-paper test. The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case. Go-Bart Importing Co. v. United States, 282 U.S. 344, 357, 51 S.Ct. 153, 158, 75 L.Ed. 374. *Reasonableness is in the first instance for the District Court to determine.* (Italics supplied.) United States v. Rabinowitz, 339 U.S. 56, 63, 70 S.Ct. 430, 434, 94 L.Ed. 653 (1950).

See Terry v. Ohio, 392 U.S. at 9–10, 88 S.Ct. 1868; Mapp v. Ohio, supra.

■ In the instant case, the search was initially so general in scope as to be exploratory in nature, and, as such, violated the rule of Stanford v. Texas, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965), proscribing, in substance, the general search warrant. See also Berger v. New York, 388 U.S. 41, 58, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1966); Kremen v. United States, 353 U.S. 346, 77 S.Ct. 828, 1 L.Ed.2d 876 (1957); cf. Terry v. Ohio, supra; McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948). Further, this search, basically exploratory in nature, was a warrantless search and, therefore, *prima facie* unreasonable unless shown to rest within an explicit exception to the warrant requirement. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); see Terry v. Ohio, supra, and cases cited id. at 20. However, under the circumstances of this case, as indicated by the record and the testimony, no exceptional exigencies existed (even though the general objects of suspect were automobiles). See Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968); Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Chief Judge Aldrich recently postulated a principle which we feel is fully applicable here:

> The [Supreme] Court continues to stress the desirability of obtaining a search warrant when it is reasonably practicable to do so * * * [for] if no penalty will ever attach to a failure to seek a warrant, as distinguished from the officers making their own, correct, determination of probable cause, warrants will never be sought * * *. [And] while the failure to obtain a warrant when one could readily have been had is not of necessity fatal to a search or seizure * * *, it will be fatal unless there are some countervailing factors. Niro v. United States, 388 F.2d 535 at 539 (1st Cir. 1968).

The government asserts no reason for the officers' failure to seek a warrant except the assertion that their search was reasonable, and therefore, required none. Cited cases in support of that reasonableness, however, go merely to the opening and cursory examination of a car door. In the instant case, by comparison, the automobiles were removed from the possession and premises of the defendant, hoisted and examined by an expert who used confidential investigatory knowledge and special tools. See Katz v. United States, supra; United States v. Nickrasch, supra. This we rule to go far beyond a cursory examination and is clearly distinguishable from the situation of Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), where the seized registration card was clearly visible to an officer who explicitly and unquestionably had a right to be in the position wherewith to view. Further, we must reject the government's suggestion that there was no seizure of the confidential and hidden vehicle numbers because nothing tangible was in fact taken. There is no longer the primitive requirement in the law of search and seizure under the fourth amendment that a physical carrying away take place. Katz v. United States, supra. The rights protected by the fourth amendment are the personal rights to security and privacy, and the right to freedom from harassment. Terry v. Ohio, supra, at 15, 88 S.Ct. 507; Mapp v. Ohio, supra, at 647, 81 S.Ct. 1684; see United States v. Nickrasch, supra. We rule, as a matter of law, that under the circumstances of the search in question, in the absence of a search warrant, the examination of the serial numbers under the chassis of the automobiles violated the defendant's fourth amendment rights.

As for the two bills of sale, our ruling is substantially the same: The security and privacy of the defendant's home and business papers were invaded without a warrant and without the urgency prerequisite to a warrantless search. The "home and papers" episode may also reasonably be considered as a continuation of the original intrusion upon the business premises. In other words, the taking of the bills of sale may well be treated as a seizure in the final step of an unreasonable search *void ab initio.*

As a final matter, we must rule upon the claim of the government that even if the facts indicate a search and seizure, the defendant did in fact waive his constitutional rights by consenting to the search.

██ ██ There is no doubt that the constitutional protection against unreasonable search and seizure may be waived. Zap v. United States, 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477 (1946); Perlman v. United States, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918); United States v. Stanack Sales Co., 387 F.2d 849 (1968); see Nelson v. Hancock, 239 F. Supp 857, 868–69 (D.C.N.H.1965), rev'd on other grounds, 363 F.2d 249 (1st Cir.), cert. denied, 386 U.S. 984, 87 S.Ct. 1292, 18 L.Ed.2d 234 (1966). However, under the reported cases, and particularly in the light of contemporary standards of constitutional protection, the burden of proving the constitutional validity of the consent or waiver is clearly upon the party relying upon that waiver. United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L. Ed. 59 (1951), citing McDonald v. United States, supra; Burke v. United States, 328 F.2d 399 (1st Cir. 1964). See Brinegar v. United States, supra; Nelson v. Hancock, supra. In the instant case, the government clearly had that burden.

██ It is equally true, and certainly of more substantial significance, that the waiver or consent must be clear, voluntary, intelligent, and knowing. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L. Ed. 1461 (1938); Amos v. United States, 255 U.S. 313, 211 S.Ct. 266, 65 L.Ed. 654 (1921). See Glasser v. United States, 315 U.S. 60, 71, 62 S.Ct. 457, 86 L.Ed. 680 (1942). A mere submission to authority is insufficient. Johnson v. United States, supra; and waiver will clearly not be implied when there is coercion. Amos v. United States, supra; and can-

848

not be conclusively presumed from a verbal expression of assent. Cipres v. United States, 343 F.2d 95 (9th Cir. 1965). And the duty of determining the validity of the waiver must clearly fall upon the sound discretion of the trial judge. Glasser v. United States, supra. We accept as a general and prudent rule of contemporary constitutional law, that "the crucial question is whether the citizen truly consented to the search," i. e., determined from all the circumstances, whether the "* * * verbal assent reflected an understanding, uncoerced, and unequivocal election to grant the officers a license which the person knows may be freely and effectively withheld." Cipres v. United States, supra, at 97–98. And the Court should hesitate to find waiver where there is substantial doubt as to any of these essential elements. See Glasser v. United States, supra.

It is, therefore, ordered that the two Chevrolet automobiles and the two bills of sale seized by the government shall be suppressed as evidence against the defendant in any criminal proceeding.