**STATE of Missouri, Respondent,**

**v.**

**Robert WITHERSPOON and Harold Hamilton, Appellants.**

**Nos. 54102, 54103.**

Supreme Court of Missouri,
Division No. 1.

Dec. 14, 1970.

John C. Danforth, Atty. Gen., Peter H. Ruger, Asst. Atty. Gen., Jefferson City, for respondent.

Floyd L. Sperry, Jr., Clinton, for appellant.

HENRY A. RIEDERER, Special Judge.

Defendant Robert Witherspoon was tried and convicted jointly with defendant Harold Hamilton, but each has appealed separately. They were both found guilty of possession of burglar tools by the same jury, which was unable to agree on the punishment. The trial court thereupon, and after allocution, sentenced each to five years in the custody of the Missouri department of corrections. Since the same

facts and law apply to both cases, we consolidate these two cases for the purpose of these appeals.

Before the consolidated jury trial began, identical motions to suppress evidence were filed and consolidated and evidence heard thereon, after which they were overruled by the trial court. This action was the sole point preserved for review. Defendants claim prejudicial error because at the time the burglar tools in question were seized without a search warrant therefor, probable cause or other lawful constitutional basis did not exist for the search and seizure. Additionally, Witherspoon claims he had not been placed under arrest, and thus the search could not be incident to an arrest as to him.

The evidence on the motion to suppress came only from the arresting officer and disclosed the following:

Defendant Witherspoon was riding in the front seat of a '68 Plymouth driven by co-defendant Hamilton south on 71 highway when stopped by a state highway patrolman about a mile north of Passaic. The patrolman had previously—just five minutes before—been advised by a female informant, previously unknown to him, that the car in which defendants were riding was being driven "at a high rate of speed, coming up on hills, being on the wrong side of the road, attempting to pass when it shouldn't be, and generally driving in a reckless manner and a high speed."

The informant also reported having seen the Plymouth "stop and throw out trash". This intelligence was given the patrolman at 8:25 p. m. at Adrian, which is 3.7 miles north of the point the Plymouth was stopped at 8:30 p. m. on May 9, 1969. In the five minutes the patrolman checked by radio and found the license number given by the informant was issued to a named person, of Independence, for use on a '49 Chevrolet. The patrolman did not observe or detect the driver of the Plymouth in question speeding or driving in a careless and reckless manner, or driving on the wrong side, or attempting to pass at the wrong time, or violating any law before he stopped the Plymouth.

When the Plymouth was stopped, the patrolman asked to see the operator's license of the driver, Hamilton. A valid license was produced. The patrolman asked Hamilton if he were the owner, and Hamilton replied negatively—saying it was owned by a female friend. The patrolman then advised that his records showed it was owned by a man from Independence, and Hamilton stated he did not know that person.

It was then that the patrolman advised Hamilton he was under arrest for using an improper license plate, and placed him in the patrol car to the rear of the Plymouth. He did not search Hamilton for weapons, but did recheck the license registration "to make sure that I had the proper information, and it come back exactly the same way. * * *" He did not mention the trash throwing allegation to Hamilton.

Then the patrolman went forward to the Plymouth to identify the passenger, whom he found by a valid driver's license to be defendant Witherspoon. He then inquired if Witherspoon thought he could operate the vehicle, and received the reply that Witherspoon felt he could if it was all right with Hamilton. He did not place Witherspoon under arrest at that time, or search him or the Plymouth for weapons at any time before the contested search of the trunk. He reported nothing in open view inside the car that caused him to be suspicious, or caused him to believe it necessary to search the trunk, either to protect himself or to aid in the investigation of the improper license plate charge; in fact, he, admitted the search could not have aided such investigation.

Rather, the patrolman asked Witherspoon, who had scooted under the wheel, "if there would be anything in the trunk they would care if I looked at". To this Witherspoon replied negatively, and handed the officer the keys—according to

the direct examination; or the officer took the keys from Witherspoon—according to the cross-examination. Hamilton, still in the patrol car behind, was not asked about the search of the trunk or the keys thereto.

The patrolman unlocked the trunk lid with the keys obtained from Witherspoon and found the trunk to contain: a two-wheel metal dolly with rubber tires, two tan colored car seat belts, three large pry bars, two large screwdrivers, an 18 inch pipe wrench, a small leather bag containing numerous tools, screwdrivers, vise-grips, punch, wire cutters, flashlight, two pairs of gloves and a brake adjustment tool.

These items were described in slightly different language in identical informations against each defendant, as being "material implements and mechanical devices adapted, designed and commonly used for breaking into a safe, warehouse, store, shop, office or dwelling house contrary to Section 560.115, Missouri Revised Statutes". They were also the objects of the motions to suppress in question here.

The patrolman did not mention, or speak of, or accuse either defendant of any crime which he observed or detected before stopping the car. Nor did he testify to any facts which by any construction could mean he had a reasonable belief or probable cause to believe they had committed any felony. There was never a suggestion the car was stolen, although the highway patrol is required by statute (Sec. 301.230 V.A.M.S.) to keep a record of stolen cars which information could also be obtained by radio.

The patrolman disclosed no known reason to believe, and did not express the belief at the hearing, that the trunk contained any contraband or evidence which could be used in the prosecution of a felony he had probable cause to believe had been or was being committed. He stated that he searched the trunk only for weapons, because conflicting stories of the defendants made him suspicious, although he did not search the persons of defendants for weapons, and checked the interior of the car "only by eyesight".

After searching the Plymouth trunk, the patrolman returned to his patrol car and summoned help from Butler, the county seat. A deputy sheriff arrived in 15 to 20 minutes, and then Hamilton was removed from the patrol car and placed in the deputy's car. Then Witherspoon was removed from the Plymouth for the first time, handcuffed and placed in the patrol car.

Then it was that Witherspoon, the passenger, was advised by the patrolman he was under arrest for investigation of possession of burglar tools. Then Hamilton, the driver, was advised he was under arrest for the same charge.

The patrolman had previously written up a traffic ticket on the improper license charge, but it was never delivered to the driver, Hamilton. The record does not disclose any prosecution on that or any other charge arising out of this incident. It does disclose that the patrolman did not advise appellants, or either of them, of their constitutional rights, including the right not to be unreasonably searched. There is no evidence showing any suspicion, much less belief, that the stopped car contained any contraband before the trunk search; or that the appellants, or either of them, were fugitives from justice on any felony violation.

Was the search in this case reasonable or unreasonable? There was no warrant for the arrest or the search. The state maintains the search and subsequent seizure were valid because incident to a lawful arrest and that such a search was necessary for the protection of the officer and to prevent the destruction of contraband. Its second point is that appellants consented to the search of the vehicle.

 The prohibition of the Fourth Amendment against unreasonable searches and seizures is enforceable against the

states through the due process clause of the Fourteenth Amendment, and hence a state has no power to sanction searches and seizures prohibited by the Fourth Amendment. Mapp v. Ohio (1961) 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; Ker v. California (1963) 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726.

Appellants have the burden of establishing the illegality of the official action; that the search was unreasonable. State v. Holt, 415 S.W.2d 761 (Mo.1967); State v. Gailes, 428 S.W.2d 555 (Mo.1968). But where, as here, the search is without warrant, the burden is on those seeking to come within one of a few specifically established and well-delineated exceptions to the Fourth Amendment warrant requirement to establish that their acts are, in fact, exempt from the rule that magistrates rather than police officers should determine when searches should be permitted and what limitations should be placed on such activities. Trupiano v. United States, 334 U.S. 699, 705, 68 S.Ct. 1229, 92 L.Ed. 1663, 1669; Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153; United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1952); Chimel v. California, 395 U.S. 752, 762, 89 S.Ct. 2034, 23 L.Ed.2d 685, 693 (1969).

The state cites the excellent article on "Search of Motor Vehicles" by F.B.I. agent John B. Hotis in 73 Dickenson Law Review 363 (Spring 1969). In it we note that: (l. c. 366) "* * * It is important to understand that a warrantless search is tolerated by the Courts in deference to police needs and solely as an exception to the basic constitutional requirement. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). For this reason the practice is certain to be examined carefully relative to any evidence of abuse."

Nathan R. Sobel, in his "Search and Seizure" (1964), also describes "the subordinate position of the incidental search"

(p. 3). And see also Professor George's "Constitutional Limitations and Evidence in Criminal Cases" (Revised 1969), particularly page 27 through 46, and Professor Scurlock's recent article on "Basic Principles of the Administration of Criminal Justice" with particular reference to seizure, 38 U.M.K.C.L.Rev. 167 l. c. 188–192 (Winter 1970).

■ The most common exception to a warrant requirement is a search made incidental to an arrest, in which an officer must act on the basis of facts of which he was cognizant prior to the arrest. Beck v. Ohio (1964) 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142; Scurlock, ibid, l. c. 180. Here there is absolutely no evidence of the officer's prior knowledge, or even an expressed suspicion, that burglar tools were hidden. Logically the arrest must precede the search. Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); State v. Morice, 79 S.W.2d 741 (Mo.1935). Here both defendants were arrested on the felony charge *after* the search and only Hamilton was previously arrested on the license plate charge. And such a search must be bona fide for articles connected with the arrest already made. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Hotis, ibid, 461; Scurlock, ibid, 200. Here the officer admitted he would not likely find any papers or materials relating to the license tag charge in the trunk. He was unlikely to find therein any "destructible evidence" concerning the license violation.

Once appellants were detained and Hamilton arrested for the license infraction, the patrolman did not issue the ticket he had written (or started to write), or move to take Hamilton before a magistrate. Nor did he learn on his radio that appellants were wanted, or were suspected of any crime, or that they had a bad reputation. Nor did he search the persons of appellants for weapons, or otherwise indicate any fear of them or any weapons they

might have. He did not search the inside of the car, or see anything in plain view there or on appellants' person which would give him reasonable grounds to search further.

There was no accusation or question concerning any other crime, and consequently no confession or admission which would give rise to a reasonable suspicion that any other crime had been or was being committed. The patrolman stated the trunk was examined for weapons. One wonders why he did not search in other more likely places for weapons first, particularly on the persons and within the immediate control of the defendants, but regardless of this there was no immediate danger or probable cause that would justify a search of the trunk.

A warrantless search of the person and things under an accused's "immediate control" is permitted to search for weapons or for the fruits of or implements used to commit the crime. Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 5, 70 L. Ed. 145 (1925); Carroll v. United States, 267 U.S. 132, 150, 45 S.Ct. 280, 287, 69 L.Ed. 543 (1925). Thus the rule allowing such limited searches is justified, it is said, " * * * by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. * * *" Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777, 780 (1964).

Since the search for weapons is justified on necessity, it is commonly held that the officer can examine only those portions of the vehicle that are accessible to an occupant.[1] If for some reason the suspect cannot reach a weapon it obviously does not pose a threat to an arresting officer. And when the threat terminates, so does the authority to search for a weapon. Hotis, ibid, 421, 457; Scurlock, ibid, 202–3. " * * * [T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger * * *" Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889, 909. Clearly, the facts herein demonstrate beyond all conjecture that the officer did not believe his safety was in danger at any time.

In addition to warrantless searches incident to a lawful arrest, since 1925 the courts have recognized that automobiles and other mobile means of transportation may be subject to a warrantless search, where there is probable cause to believe the conveyance contains evidence or contraband an officer is entitled to seize. Carroll v. United States, supra; Hotis, ibid, pp. 389–408; Scurlock, ibid, p. 204. The rationale is that "the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." 267 U.S. at 155, 45 S.Ct. at 286.

This doctrine was recently affirmed in Chambers v. Moroney, 399 U.S. 42, 48–49, 90 S.Ct. 1975, 26 L.Ed.2d 419, where the court approvingly quoted from Carroll as to the limits of such search as follows:

" 'Having thus established that contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant, we come now to consider under what circumstances such search may be made. * * *

1. Professor George comments (pp. 73–74):
" * * * If after initiating the encounter the experienced officer reasonably believes that the driver or occupants may be armed, he should be fully justified in ordering them out, frisking them, and quickly checking the part of the vehicle that might be accessible to them if they should break away from the officer and attempt to flee (c. f. Shelton v. State [3 Md.App. 394] 239 A.2d 610 (1968)). But this probably would not extend to a search of the trunk of a passenger automobile or the body of a truck not readily available to the defendant, since this begins to look like an exploratory search for evidence."

[T]hose lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official, authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise.

\* \* \* \* \* \*

" 'The measure of legality of such a seizure is, therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband liquor therein which is being illegally transported.' 267 U.S., at 153–154, 155–156, 45 S.Ct., at 285–286."

In Chambers the arrestee was apprehended about two miles from a filling station within an hour after it was held up. The police had been alerted that the getaway car was a blue station wagon, and that one robber was wearing a green sweater and the other a trench coat. The arrestee was in the apprehended blue station wagon, wearing a green sweater and there was a trench coat in the car. There were many other factors which contributed to the fact that there was indeed substantial probable cause for a reasonable search permitted by the Constitution.

And such were the factual situations in the decisions following Carroll. C.f. Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed.2d 629 (1931); Scher v. United States, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151 (1938); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); and Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967) (upholding a warrantless search of a car impounded "as evidence" pursuant to a state statute).

Likewise, the cited recent Missouri decisions lie in this factual category. In State v. Murray, 445 S.W.2d 296 (Mo.1969), the officer knew that a felony had been committed and had reasonable grounds to believe the car and a passenger were the same as identified by the holdup victim. State v. Moody, 443 S.W.2d 802 (Mo.1969) was a stimulant drug case in which a search and seizure were made incident to a lawful arrest.

Recognizing that " \* \* \* The constitutional validity of a warrantless search is pre-eminently the sort of question which can be decided only in the concrete factual context of the individual case \* \* \*", (Sibron v. New York, 392 U.S. 1. c. 59, 88 S.Ct. 1. c. 1901), Judge Donnelly in the Moody opinion noted: " \* \* \* We limit the holding in this case to 'the precise facts to which it is to be applied' \* \* \*", 443 S.W.2d 1. c. 804.

It is also argued the trilogy of cases in the Durham litigation[2] upheld an automobile search and seizure similar to that involved herein. Durham, however, involved not only search incident to arrest, but the added factors of visibility of a portion of the stolen goods on the floor of the auto and safety of the arresting officers (the automobile was driven by the three suspects to the police station behind the police car).

State v. Novak, 428 S.W.2d 585 (Mo. 1968), was an arrest for burglary in an apartment, not in a car, and therefore sheds no direct light on the "concrete factual context" of this case.

In fact, no case is cited which falls in this category; or which permits a trunk search based upon such a flimsy set of facts.

It is important to remember that Carroll " \* \* \* merely relaxed the requirement for a warrant on the grounds of practicality. It did not dispense with the need for

---

2. Durham v. Haynes, 258 F.Supp. 452 (E. D.Mo.1966), aff'd 368 F.2d 989 (8th Cir. 1966), cert. den. 390 U.S. 959, 88 S.Ct. 1054, 19 L.Ed.2d 1154; State v. Durham, 386 S.W.2d 360 (Mo.1965), cert. den. 382 U.S. 857, 86 S.Ct. 110, 15 L.Ed.2d 94; State v. Durham, 367 S.W. 2d 619 (Mo.1963), cert. den. 375 U.S. 861, 84 S.Ct. 130, 11 L.Ed.2d 89.

287

probable cause". Henry v. United States, 361 U.S. 98, 104, 80 S.Ct. 168, 172, 14 L.Ed. 2d 134; United States v. Lefkowitz, 285 U.S. 452, 467, 52 S.Ct. 420, 424, 76 L.Ed. 877, 884. Nor can a search be justified by what is uncovered later on; Byars v. United States, 273 U.S. 28, 29, 47 S.Ct. 248, 71 L.Ed. 520; State v. Seymour, 438 S.W.2d 161 (Mo.1969); for "Thus the Government is obliged to justify the arrest by the search and at the same time to justify the search by the arrest. This will not do. * * * Any other rule would undermine 'the right of the people to be secure in their persons, houses, papers and effects', and would obliterate one of the most fundamental disstinctions between our form of government, where officers are under the law, and the police-state where they are the law." Johnson v. United States, 333 U.S. 10, 16–17, 68 S.Ct. 367, 370, 92 L.Ed. 436.

More to the point in the instant case are the following decisions: State v. Michaels (1963) 60 Wash.2d 638, 374 P.2d 989 (arrest for failing to signal left turn did not warrant search in trunk for suitcases); Lane v. Commonwealth (Ky.1964) 386 S.W.2d 743 (holding an arrest for improper passing a mere pretext for searching trunk containing seven cases of whiskey); McCurdy v. State (1965) 42 Ala.App. 646, 176 So.2d 53 (holding trunk search was for general exploration, not for detaining prisoner or preventing escape); People v. Lewis (1966) 34 Ill.2d 211, 215 N.E.2d 283 (holding search of trunk unnecessary to protect officers or prevent defendant's escape); and Dyke v. Taylor Implement Manufacturing Company, 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968).

In Dyke, the court reversed because the trial court admitted in evidence an air rifle discovered under the seat of the car in which Dyke and others were riding. They appear to have been arrested for reckless driving, but the officers had no reasonable cause to believe there was a rifle in the car. There the court, speaking through Mr. Justice White, stated at 221–222, 88 S.Ct. at 1475: "Automobiles, because of their mobility, may be searched without a warrant upon facts not justifying a warrantless search of a residence or office. (Citing Brinegar and Carroll, supra). The cases so holding have, however, always insisted that the officers conducting the search have 'reasonable or probable cause' to believe that they will find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search * * * The evidence placed upon the record is insufficient to justify a conclusion that McKinney's car was searched with 'reasonable or probable cause' to believe the search would be fruitful."

Likewise, in the instant case the facts can only justify the conclusion that the officer embarked on an exploratory search, without any justification shown in the record that he had reasonable or probable cause. Lacking that vital element, the motions to suppress should have been sustained, unless the defendants, or one of them, consented to the search.

■ The state also contends that the passenger Witherspoon consented to the search. He was not arrested until after the unwarranted trunk search, and who was not permitted to leave the Plymouth until a deputy sheriff arrived following the call for help subsequent to the trunk search. It is not contended that the driver Hamilton consented to the search because he was not given the opportunity to do so, having been removed to the patrol car before the officer conversed with Witherspoon. But it is contended that Hamilton cannot successfully attack the adverse result of a search to which Witherspoon consented. The latter point will necessarily fail if Witherspoon did not, in fact, legally consent to the search.

When the state seeks to rely upon consent to justify the lawfulness of a search, it has the burden of proving that the consent was, in fact, freely and voluntarily given. Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797, 802.

This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. Amos v. United States, 255 U.S. 313, 317, 41 S.Ct. 266, 65 L.Ed. 654, 656; Johnson v. United States, supra, 333 U.S. at 13, 68 S.Ct. 367, 92 L.Ed. at 439.[3]

Professor Scurlock comments on the consent search: (ibid, pp. 204–205) "If a person gives his consent to a search freely, intelligently and knowingly, he waives any right to object later to any evidence seized within the scope of the consent. State v. Gailes, 428 S.W.2d 555 (Mo.1968); Zap v. United States, 328 U.S. 624 [66 S.Ct. 1277, 90 L.Ed. 1477] (1946). The consent *must be genuinely voluntary, unequivocal, and uninduced by fraud and duress, expressed or implied.* State v. Young, 425 S.W.2d 177 (Mo.1968); Bumper v. North Carolina, 391 U.S. 543 [88 S.Ct. 1788, 20 L.Ed.2d 797] (1968). Will the consent be 'voluntary' if the officer does not advise the person of his Fourth Amendment rights, i. e., that he is privileged to refuse admission, that there is a general requirement of a search warrant and that evidence found on the premises may be used against him? In short, what is the relevancy of Miranda v. Arizona, 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966) * * *? Some courts have held the government to the burden of showing either that some Fourth Amendment warning was given or that the suspect was in fact already *aware* of his Fourth Amendment rights. United States v. Blalock, 255 F.Supp. 268 (E.D. Pa.1966); United States v. Mason, 290 F. Supp. 843 (N.D.N.H.1968); Schoepflin v. United States, 391 F.2d 390 (9th Cir. 1968). Contra, United States ex rel. Combs v. La-Valle, 417 F.2d 523 (2d Cir. 1969)." (Emphasis supplied.)

We believe the better reasoned and balanced view to be that such a consent or waiver of Fourth Amendment rights should not be automatically excluded because of failure to spell out the full rights in every detail; and neither should a waiver be conclusively presumed from a verbal expression of consent or acts tantamount thereto. As suggested by Professor George [4], we believe that all factors should be considered in a "totality of circumstances" criterion.

The court "must determine from all the circumstances whether the verbal assent reflected an understanding, uncoerced, and unequivocal election to grant the officers a license which the person knows may be freely and effectively withheld * * *", Cipres v. United States, 343 F.2d 95, 97 (C.A.9, 1965); United States v. Smith, 308

---

3. Hotis states: " * * * As in all situations involving a waiver of fundamental constitutional rights, it can be expected that the prosecution will have to meet a high standard of proof. Johnson v. Zerbst, 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461] (1938). In general, the limitations set on consent searches are the same considerations that have been employed in the past in determining the voluntariness of confessions. Thus the courts have held that consent must be given in circumstances free of 'duress or coercion,' that it be 'knowingly and intelligently' given, and that it be stated in a 'clear and unequivocal' manner. Because these determinations generally involve inquiries into the subjective state of mind of the suspect, the officer, or both, they present practical difficulties in judicial supervision which more often than not are resolved in favor of the criminally accused." (p. 408).

4. "The chief issue at the moment is whether a person can validly waive if he is in custody and has not been advised of his right to refuse to waive. Most of the decisions hold that this is simply one factor to be considered with the rest of the question of whether the waiver is valid, but not necessarily the controlling one. (People v. Dahlke [257 Cal.App.2d 82], 6 [64] Cal.Rptr. 599 (Ct.App.1968); State v. Oldham [92 Idaho 124], 438 P.2d 275 (Idaho 1968); People v. Shaw, 9 Mich.App. 558, 157 N.W.2d 811 (1968); State v. Leavitt [103 R.I. 273], 237 A.2d 309 (R.I.1968)). One recent decision, however, invalidated a consent to a car search because no warnings had first been given. (United States v. Barton, 282 F.Supp. 785 (D.Mass.1967))". George, ibid, (pp. 80–81).

F.2d 657 (C.A.2, 1962) cert. den., 372 U.S. 906, 83 S.Ct. 717, 9 L.Ed.2d 716 (1963); State v. Lock, 302 Mo. 400, 259 S.W. 116 (1924).

This has been held to mean "there must be a total absence of duress or coercion, express or implied", Commonwealth v. Harris, 429 Pa. 215, 239 A.2d 290, 293 (1968) and applies "if the individual freely and intelligently gives his unequivocal and specific consent to the search, uncontaminated by any duress or coercion, express or implied". Montana v. Tomich, 332 F.2d 987, 989 (C.A.9, 1964).

Non-resistance to suggestions of police is not infrequent; true consent, free of fear or pressure, is not so readily found. Higgins v. United States, 93 U.S.App.D.C. 340, 209 F.2d 819 (1954); State v. Owens, 302 Mo. 348, 259 S.W. 100 (1924).

In this case Witherspoon did not give any oral consent. He was not advised of his Fourth Amendment rights. There is no evidence in the record indicating that he knew and understood he had any such right. Any consent he gave by his actions could be construed to be consistent with a desire not to offer any resistance to the patrolman. In the light of the standards set forth above, the record does not contain sufficient facts from which we could reasonably conclude that Witherspoon freely, intelligently and unequivocally intended to or did waive his constitutional right, and thus consent to the search. Thus, we must conclude, in the language of Amos v. United States, 255 U.S. 313, 317, 41 S.Ct. 266, 268, 65 L.Ed. 654, " * * * it is perfectly clear that under the implied coercion here presented, no such waiver was intended or effected."

It follows that the motions to suppress should have been sustained. Since the state cannot proceed on this charge without the evidence which should have been suppressed, the judgments nisi are reversed and the defendants discharged.

SEILER, P. J., concurs.

HOLMAN, J., concurs in part and dissents in part in separate opinion filed.

BARDGETT, J., not participating because not a member of the Court when cause was submitted.

HOLMAN, Judge (concurring in part and dissenting in part).

I concur in the principal opinion insofar as it disposes of the case of defendant Harold Hamilton, No. 54,103; but I respectfully dissent insofar as the opinion disposes of the case against defendant Robert Witherspoon, No. 54,102. I would affirm the conviction against Witherspoon because I think the evidence plainly shows that he consented to the search of the trunk of the automobile at a time when he was in control of it. As shown by the transcript and in the principal opinion the patrolman asked Witherspoon "if there would be anything in the trunk they would care if I looked at," to which Witherspoon answered "No," and handed the officer the keys. At that time he was not under arrest and there was nothing to indicate any duress, express or implied. It is therefore reasonable to conclude that the consent for the search was voluntary on the part of Witherspoon and hence that there was no occasion for suppressing the evidence obtained in the search and it was properly admitted against Witherspoon in the trial of the case. I think this conclusion is supported by Hamilton v. State of North Carolina, D.C., 260 F.Supp. 632 [3]; Gendron v. United States, D.C., 227 F.Supp. 182 [1]; State v. Foster, Mo.Sup., 349 S.W.2d 922 [4]; State v. Green, Mo.Sup., 292 S.W. 2d 283 [3], and State v. Gailes, Mo.Sup., 428 S.W.2d 555 [2].

For the reasons stated I would affirm the judgment of conviction in the Witherspoon case.