Alex S. **EVANS**, Appellant,

v.

A. L. **DUTTON**, Warden, Georgia State Prison, Reidsville, Georgia, Appellee.

No. 25348.

United States Court of Appeals
Fifth Circuit.

Sept. 16, 1968.

Rehearing Denied Nov. 20, 1968.

# 827

Robert B. Thompson, Gainesville, Ga., for appellant.

Alfred L. Evans, Jr., Asst. Atty. Gen., Atlanta, Ga., for appellee.

Before GEWIN and THORNBERRY, Circuit Judges, and EDENFIELD, District Judge.

GEWIN, Circuit Judge:

A year and a half after three police officers were found shot to death in Gwinnett County, Georgia, appellant Evans was tried before a jury and convicted of the murder of one of the officers. Since the jury did not recommend mercy, the Gwinnett County Superior Court sentenced him to die in the electric chair. Having exhausted his state remedies,[1] Evans filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Georgia, alleging that his conviction had been obtained in violation of his sixth and fourteenth amendment rights. The district court denied the petitioned relief and Evans has appealed to this court. We have determined that Evans was denied his sixth and fourteenth amendment right to be confronted by the witnesses against him. We therefore reverse the judgment of the district court.

This case was argued before this court with Williams v. Dutton [2] which was the appeal of an alleged coconspirator of Evans. The relevant background facts are set forth in *Williams* and we will not repeat them here. In addition, most of the issues raised are common to both cases. Since we must reverse on the confrontation question, we do not reach Evans' other contentions.[3] However, we should point out that many of the

1. The Georgia Supreme Court affirmed Evans' conviction, Evans v. State, 222 Ga. 392, 150 S.E.2d 240 (1960), and the United States Supreme Court denied his petition for a writ of certiorari, Evans v. Georgia, 385 U.S. 953, 87 S.Ct. 336, 17 L. Ed.2d 231 (1966).

2. 400 F.2d 797 (5th Cir. 1968).

3. The other contentions concern the availability and extent of discovery to a criminal defendant against the state; the qualification of jurors; the admissibility of the testimony of a witness who has been granted immunity from prosecution; and the availability of discovery in a federal habeas corpus proceeding.

same issues will arise upon the retrial of this case and, in the interest of sound judicial administration, we commend a reference to the treatment in *Williams* of those constitutional questions.

██ The facts upon which Evans' sixth amendment contention rests are not in dispute. During Evans' trial a witness, one Shaw, testified that Williams had stated to him that "if it hadn't been for that dirty-son-of-a-bitch, Alex Evans, we wouldn't be in this now." According to Shaw, Williams made this statement the day after his arraignment in Gwinnett County on the murder charge and in response to Shaw's inquiry as to how Williams had made out in court. At the time of the alleged statement, both Williams and Shaw were serving sentences for unrelated crimes in the federal penitentiary in Atlanta, Georgia.[4]

Evans' counsel made a timely and vigorous objection to the statement attributed to Williams, arguing that it was inadmissible under both state evidentiary law and the sixth amendment. The trial court overruled counsel's objection, holding the statement admissible in evidence under a Georgia statute which provides:

> After the fact of conspiracy shall be proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all.[5]

The Georgia Supreme Court upheld the ruling of the trial court, stating:

> The defendant [Evans], and his co-conspirator, Williams, at the time this statement was made, were still concealing their identity, keeping secret the fact that they had killed the deceased, if they had, and denying their guilt. There was evidence sufficient to establish a prima facie case of conspiracy to steal the automobile and the killing of the deceased by the conspirators while carrying out the conspiracy, and the statement by Williams made after the actual commission of the crime, but while the conspiracy continued was admissible.[6]

The confrontation clause of the sixth amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." In the early case of Salinger v. United States the Supreme Court stated:

> The right of confrontation did not originate with the provision in the Sixth Amendment, but was a common-law right having recognized exceptions. The purpose of that provision, this court often has said, is to continue and preserve that right, and not to broaden it or disturb the exceptions.[7]

Thus the fact that the framers of the Constitution did not intend to exclude

---

4. Shaw's testimony was somewhat incredible. He testified that Williams was talking to him in a normal voice through a ten-by-ten plate-glass window in a prison hospital door, while Williams was lying on a bed in the room and Shaw was standing in the hall. Shaw had stated in the Williams trial that the window was covered only by wire mesh. The fact that it was covered by a pane of plate glass was brought out in Evans' trial. Moreover, evidence was submitted but rejected by the trial court which tended to show that Shaw's testimony may have been compensation for a respite from the dull routine of prison life.

In spite of its basic incredibility, we are convinced that it cannot be called harmless. See Chapman v. State of California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L. Ed.2d 705 (1967): "[B]efore a federal constitutional error can be held harmless,

the court must be able to declare a belief that it was harmless beyond a reasonable doubt." In his dissenting opinion, Justice Quillian of the Georgia Supreme Court stated that Shaw's "testimony . . . obviously was prejudicial to the defendant." Evans v. State, 222 Ga. 392, 400, 150 S.E.2d 240, 251 (1966).

5. Ga.Code Ann. § 38–306 (1954 rev.).

6. Evans v. State, 222 Ga. 392, 400, 150 S. E.2d 240, 248 (1966).

7. 272 U.S. 542, 548, 47 S.Ct. 173, 175, 71 L.Ed. 398 (1926). See Dowdell v. United States, 221 U.S. 325, 330, 31 S.Ct. 590, 55 L.Ed. 753 (1911); Kirby v. United States, 174 U.S. 47, 61, 19 S.Ct. 574, 43 L.Ed. 890 (1899); Robertson v. Baldwin, 165 U.S. 275, 281–282, 17 S.Ct. 326, 41 L.Ed. 715 (1897); Mattox v. United States. 156 U.S. 237, 243, 15 S.Ct. 337, 39 L.Ed. 409 (1895).

hearsay evidence appears to have been viewed as having ossified the rule as then developed. This is a regrettably shallow assessment of the wisdom and foresight of those responsible for the destiny of this nation.[8] But this view of the confrontation clause presented no difficulty so long as the clause was applicable only in the federal courts, because the confrontation-hearsay rule was then, for all practical purposes, a single principle in federal criminal cases.[9] History complicated the role of the federal judiciary, however, when the fourteenth amendment was adopted and the federal constitutional standard of due process of law was imposed upon the states. Since many of the rights and privileges embodied in the Bill of Rights had long been regarded as fundamental to any concept of ordered liberty, they were expectably enforced against the states under the due process clause of the fourteenth amendment.[10] The enforcement of the confrontation clause against the states now requires the application of a none-too-concrete standard to state hearsay rules which have experienced a various and even erratic evolution.[11] Thus the duty of this court is not only to interpret the framers' original concept in light of historical developments,[12] but also to translate into due-process terms the constitutional boundaries of the hearsay rule.[13]

In applying the confrontation clause to the states, the Court in Pointer v. State of Texas stated:

> It cannot seriously be doubted at this late date that the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him. And probably no one, certainly no one experienced in the trial of lawsuits, would deny the value of cross-examination in exposing falsehood and bringing out the truth in the trial of a criminal case. . . . The fact that this right appears in the Sixth Amendment of our Bill of Rights reflects the belief of the Framers of those liberties and safeguards that confrontation was a fundamental right essential to a fair trial in a criminal prosecution.[14]

However, neither *Pointer* nor any subsequent decision adequately explains how and when a state hearsay rule exceeds permissible constitutional bounds. In spite of the Court's effusive language, the confrontation clause is certainly not violated merely because the defendant is not permitted to confront and cross-examine a witness against him. The Court has approved the admission, under a recognized exception to the hearsay rule, of a statement by a witness who is unavailable at the time of trial despite the fact that the right of confrontation is denied.[15] In explaining a

---

8. See Frankfurter, John Marshall and the Judicial Function, 69 Harv.L.Rev. 217, 229 (1955): "No doubt, these provisions of the Constitution were not calculated to give permanent legal sanction merely to the social arrangements and beliefs of a particular epoch. Like all legal provisions without a fixed technical meaning, they are ambulant, adaptable to the changes of time. That is their strength. . . . "

9. See cases cited in note 7 supra.

10. See, e.g., Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) (fifth amendment privilege against self-incrimination); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (sixth amendment right to counsel); Mapp v. Ohio, 367 U.S. 643, 81 S. Ct. 1684, 6 L.Ed.2d 1081 (1961) (fourth amendment right against unlawful search

and seizure). See generally Henkin, "Selective Incorporation" In the Fourteenth Amendment, 73 Yale L.J. 74 (1963).

11. McCormick, Evidence § 230 (1954).

12. See Cardozo, The Nature of the Judicial Process 51–97 (1949).

13. But see Note, Confrontation and the Hearsay Rule, 75 Yale L.J. 1434 (1966), in which the writer argues against this approach to the confrontation clause.

14. 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965).

15. Pointer v. State of Texas, 380 U.S. 400, 407, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). See Bruton v. United States, 391 U.S. 123, 128 n. 3, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Also see the pre-Pointer cases cited in note 7 supra.

previously recognized exception to the right of confrontation, the Court in Barber v. Page stated:

> It is true that there has traditionally been an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination. . . . This exception has been explained as arising from necessity and justified on the ground that the right of cross-examination initially afforded provides substantial compliance with the purposes behind the confrontation requirement.[16]

Generally but not unexceptionally, some evidence is better than none at all. Thus when rational substitutes for the benefits of confrontation actually exist, there is no reason to exclude hearsay evidence. Although we express no view as to the constitutional validity of any exception to the confrontation requirement which has not been ruled upon, it is important to point out that generally recognized exceptions to the hearsay rule have developed from a painful process of rationalizing the denial of confrontation.[17]

■ The Supreme Court has now made clear that the rationale of hearsay exceptions in criminal cases must be continually scrutinized and reevaluated. In Barber the trial court had admitted in evidence the transcript of testimony given at a prior trial upon the prosecutor's showing that the witness was outside the state. According to the traditional view, the evidence was admissible because a witness outside the jurisdiction is beyond the compulsory process of the court.[18] The Supreme Court rejected this justification, stating:

> Whatever may have been the accuracy of that theory at one time, it is clear

that at the present time increased cooperation between the States themselves and between the States and the Federal Government have largely deprived it of any continuing validity in the criminal law.[19]

We therefore think it clear that, if an accused is to be deprived of the right to confront and to be confronted by the witnesses against him, there must be salient and cogent reasons for the deprivation. A criminal defendant cannot, consistent with the confrontation clause, be convicted upon the testimony of phantom witnesses whose credibility is unknown and unknowable by the trier of fact.

■ Appellee in this case states that Evans "demonstrates a rather basic confusion" in contending that his right to confrontation was infringed because witness Shaw did in fact appear in court and testify. However, we think the confusion is appellee's. The testimony objected to was not Shaw's but that attributed by Shaw to Williams who was not in court and who did not testify. Appellee further argues that the Supreme Court authority cited by Evans involved *written* evidence and that those cases, therefore, do not control the *oral* statement involved here. Since appellee has shown no basis for justifying a different treatment of written and oral evidence, we reject the distinction as untenable.

We have searched in vain for a reason to justify the abridgment of the right to confrontation which obviously occurred in this case. Appellee merely points to Georgia's coconspirator statute which, rather sphinx-like, answers all but the questions we ask. The admission in evidence of the statement attributed to Williams occurred in circumstances which offered no rational substitute for

16. 390 U.S. 719, 722, 88 S.Ct. 1318, 1320, 20 L.Ed.2d 255 (1968).

17. See 5 Wigmore, Evidence §§ 1420–27 (3d ed. 1940).

18. See McCormick, Evidence § 234 (1954); 5 Wigmore, Evidence § 1404 (3d ed. 1940).

19. 390 U.S. at 723, 88 S.Ct. at 1321. The Court held that, unless the prosecutor has made a good-faith effort to secure the witness' presence at the trial and failed, the witness cannot be regarded as unavailable.

confrontation.[20] In Douglas v. State of Alabama [21] the state called as a witness against the defendant one Loyd, who had already been convicted on the same charge. When Loyd refused to answer questions, the prosecutor proceeded to read a confession, allegedly made by Loyd, which incriminated the defendant. As he read, the prosecutor would pause occasionally and ask Loyd if he had made the statement read, but Loyd refused to answer any questions. The Supreme Court held that the prosecutor's ventriloquistic performance had violated the defendant's sixth amendment right to confrontation. A substantially similar attempt was made in this case to put words into the mouth of Williams who would doubtless have spit them out if he had testified.[22]

In support of the constitutional validity of the Georgia statute under which Williams' alleged statement was admitted, appellee argues that the statute is identical in principle to rules in both federal and state courts. Since the denial of confrontation in the present case is without rational justification, we need not consider the implications of a general judicial acceptance of such a rule. However, we should point out that the statute involved here, as interpreted by the Georgia Supreme Court, goes far beyond the traditional coconspirator exception to the hearsay rule.[23] The crime had been committed well over a year before the statement was allegedly made. Moreover, all three of the alleged conspirators were at that time in prison serving sentences for other crimes. With all due respect to Georgia's highest tribunal, it is inconceivable that the statement attributed to Williams was made "during the pendency of the criminal project." [24] The authorities relied upon by appellee [25] make clear that the recognized exception relates only to statements actually made while the criminal conspiracy remained alive.[26]

As construed by the Supreme Court of Georgia, the statutory coconspirator exception to the hearsay rule authorizes practices repugnant to the sixth amendment under the facts and in the circum-

20. Appellee has argued in his brief that the trend in the law today is to reject the hearsay rule "as a senseless anachronism." Whatever may be the trend of the law of evidence in civil and administrative proceedings, the trend of the criminal law is subject to a different set of circumstances, not the least of which is the sixth amendment.

21. 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).

22. Since Williams pleaded not guilty and subsequently appealed his conviction, it is almost certain that he would have denied making the statement even if he had agreed to testify.

23. See, e.g., Fiswick v. United States, 329 U.S. 211, 216–17, 67 S.Ct. 224, 91 L.Ed. 196 (1946); 4 Wigmore, Evidence § 1079 (3d ed. 1940); Annot., 4 A.L.R.3d 684 (1965); 16 Am.Jur.2d Conspiracy § 40 (1964).

24. The Georgia Supreme Court conceded that Williams' alleged statement was "made after the actual commission of the crime." Evans v. State, 222 Ga. 392, 397, 150 S.E.2d 240, 248 (1966). Additionally, contrary to the state court's finding that the coconspirators were still concealing their identity, the appellee in his brief to this court admits that the statement attributed to Williams was "a statement which implicated Evans." In Fiswick v. United States, 329 U.S. 211, 217, 67 S. Ct. 224, 227, 91 L.Ed. 196 (1946), the Supreme Court stated: "[C]onfession or admission by one co-conspirator after he has been apprehended is not in any sense a furtherance of the criminal enterprise. It is rather a frustration of it."

25. Schine Chain Theatres, Inc. v. United States, 334 U.S. 110, 116–17, 68 S.Ct. 947, 92 L.Ed. 1245 (1948); United States v. United States Gypsum Co., 333 U.S. 364, 393, 68 S.Ct. 525, 92 L.Ed. 746 (1948); Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229, 249, 38 S.Ct. 65, 62 L.Ed. 260 (1917); 31A C.J.S. Evidence § 362 (1964). Also see authorities cited in note 23 supra.

26. We think it indicative of the evidentiary quality of the statement attributed to Williams that it would not, under generally recognized rules of evidence, have been admissible even if Williams had testified. We know of no rule of evidence which would permit a witness to testify to an incriminating extrajudicial statement made by him sometime in the past.

stances presented in this case. As applied in this case, the statute collides with Evans' sixth amendment right of confrontation. Since appellant Evans' right to confront the witnesses against him was infringed, it is clear that he is entitled to a new trial within a reasonable time. Accordingly, the judgment of the district court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.