**Sam HOOVER, Petitioner,**

v.

**Dr. George J. BETO, Director of Texas Department of Corrections, Respondent.**

**Civ. A. No. 68–H–581.**

United States District Court
S. D. Texas,
Houston Division.

Nov. 18, 1969.

Certificate of Probable Cause Denied

Dec. 29, 1969.

Warren Burnett, Odessa, Tex., Luther Jones, Jr., Corpus Christi, Tex., Raeburn Norris, Houston, Tex., for petitioner.

Lonny F. Zwiener, Austin, Tex., for respondent.

## MEMORANDUM AND ORDER:

HANNAY, *District Judge.*

Petition for Writ of Habeas Corpus. Title 28, U.S.C.A., Section 2241 et seq.

Petitioner is presently serving a sixty year sentence for his conviction in the criminal district court of Harris County, Texas as an accomplice to the felony offense of robbery by firearms. The conviction was affirmed by the Texas Court of Criminal Appeals in Hoover v. Texas, 390 S.W.2d 758.

The prosecution arose out of a particularly sinister, brutal and prolonged armed intrusion into a home that carried with it the indicia of conspiratorial intent to commit major theft and even syndicated criminal enterprise. The operative facts in the state prosecution were stated by the Texas Court of Criminal Appeals in Hoover v. Texas, supra, at 759–760:

"* * * The indictment alleged that on or about March 11, 1964, and before the commission of robbery by

firearms of Mair Schepps, by John Oscar Young, Samuel Spivey, and Calvin Sellars, the appellant did unlawfully and wilfully advise, command, and encourage them to commit said offense, the appellant not being present at the time of the commission of the robbery by said three named persons. * * *"

"The evidence reveals that after Spivey, Young, and Sellars had been advised by the appellant that Schepps had $300,000 in money in his home, the appellant encouraged them among other things, to "get you a car and equipment (guns) and get ready to go in," and he also told them where to look for the money in the house. These three men, wearing masks, two of whom were armed with pistols and one with a sawed-off shotgun, went to the Schepps' home about 7 P.M., March 11, 1964. While they were preparing to enter the house, Mrs. Tuck, a nurse employed by Schepps, left the house to go to a nearby garage apartment and she was knocked unconscious by one of the masked men. Two of the robbers entered the main house and violently assaulted Mr. and Mrs. Schepps and the third robber brought Mrs. Tuck into the house shortly thereafter.

"After numerous unsuccessful inquiries about the $300,000 the robbers' acts of violence and torture increased, to compel the Schepps to reveal the location of the money. Mrs. Schepps' jaw was broken, and some of her teeth were knocked out and others loosened; she was burned across the abdomen with a heated butcher knife; she was repeatedly burned on her face and body with cigarettes, and also repeatedly shocked with an electric wire placed to her teeth, breasts and private parts; a fireplace poker and a pistol were inserted into her vagina; and she was shot in the thigh with a .44 magnum pistol as she lay prostrate on the floor. Mr. Schepps was severely and brutally beaten and lay unconscious for short periods of time dur-

ing the three-hour attack. The injuries of Mrs. Tuck were not so serious, but she required several days of hospitalization. The Schepps' ten-month old baby was threatened, and a shot was fired into the baby bed where the child lay. Most of the furniture and furnishings in the house, especially those on the second floor, were torn, broken, demolished, and scattered in an intense and violent search for the $300,000 reportedly hidden therein.

"Mair Schepps testified that he was in fear of his life and serious bodily injury when the robbers, against his will, took from him $3,900 in money, a man's diamond ring of 4.83 carats, and a 2.70 carat diamond necklace."

* * * * *

"Testifying as a state's witness, Samuel Spivey stated that appellant told him and Young about the $300,000 in money in the Schepps' home; that after he and Young had viewed the Schepps' house, they told appellant that another man was needed for the job and he selected Sellars. * * *"

Two of the alleged principals were convicted as such and assessed the death penalty. Young v. Texas, Tex.Cr.App., 398 S.W.2d 572; Sellars v. Texas, Tex. Cr.App., 400 S.W.2d 559.

Petitioner has now exhausted his available state remedies, Article 11.07, as amended, Vernon's Ann.C.Cr.P., as required by law. Title 28, U.S.C.A., Section 2254.

Petitioner attacks the constitutionality of his conviction on two grounds. One is that evidence which was the object of an illegal search and seizure was introduced at the trial. The other is that his right to confront and cross-examine adverse witnesses was violated by the introduction into evidence of testimony of a police officer that included oral admissions by a co-indictee which implicated Petitioner in planning the robbery. The factual basis for these contentions is to be determined from the record as both parties elected not to present further evidence at the hearing granted by the

Court. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770.

It is not disputed that the affidavit supporting the warrant under which the search in question was executed was itself insufficient in light of the subsequent case of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (June 15, 1964). The search was executed in March of 1964. The evidence consequently seized by the arresting officers included certain diamonds which additional proof at the trial strongly tended to show were owned by the victims of the robbery and had been taken from them by those who perpetrated the robbery. The trial of instant case began in July of 1964.

The Respondent relies heavily upon the contention that Petitioner, an attorney with extensive experience in criminal law, in fact consented to the search independent of any search warrant. A search without a warrant or without a proper warrant may be made if the party searched consents thereto and the consent is not the product of coercion. Johnson v. United States, 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436; Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654; Pekar v. United States, 5 Cir., 315 F.2d 319, 325; Ray v. United States, 5 Cir., 84 F.2d 654, 656; Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649, 651; Montana v. Tomich, 9 Cir., 332 F.2d 987; Channel v. United States, 9 Cir., 285 F.2d 217; McDonald v. United States, 10 Cir., 307 F.2d 272; previously cited, supra; United States v. Elliott, D.C., 210 F.Supp. 357. See also: Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (June, 1968), to which this opinion will more fully advert hereinafter.

*It is significant to note that the foregoing pre-Bumper case authorities, with the exception of the Ninth Circuit case of Montana v. Tomich, supra, involved direct appellate review of felony prosecutions. This is significant because the issue involves both the burden and the quantum of required proof.* (Emphasis added throughout).

The Respondent additionally relies upon the proposition that since Petitioner's wife was subsequently called to testify that the diamonds were theirs (S/F, 920–922) any error in their introduction into evidence was thereby cured, citing Haid v. United States, 9 Cir., 157 F.2d 630; McDonald v. United States, 10 Cir., 307 F.2d 272; Caldwell v. United States, 8 Cir., 338 F.2d 385.

Facts and circumstances that would tend to prove consent are reflected in the testimony of Officer Hodges (S/F, pp. 670–700). This will be adverted to hereinafter in this opinion. As indicated, Hodges and other peace officers executed the search in question some several months before the announcement of *Aguilar* by the United States Supreme Court.

I.

In a series of recent decisions, the United States Supreme Court has turned to the far reaching issue of the time-embracing scope of principles of criminal procedure which henceforth will bear the dignity of federal constitutional guarantee. The question has been more frequently stated as being the retroactive or prospective applicability of a particular rule in relation to the date of its announcement.

Initially presented here for determination is the chronological applicability of Aguilar v. Texas, supra. In Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (June, 1965), the United States Supreme Court announced that the rule in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R. 2d 933 (1961), which over-ruled Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), and held that the exclusion of evidence seized in violation of the search and seizure provisions of the Fourth Amendment was required of the states by the due process clause of the Fourteenth Amendment, was not to be retroactively applied. *Linkletter* clearly pointed out that the exclusionary rule of *Mapp* stood upon a different jurisprudential basis from certain criminal pro-

cedural rules which involve "* * * the fairness of the trial—the very integrity of the fact-finding process." 381 U.S. at 639, 85 S.Ct. at 1743. In treating retroactivity in later cases the United States Supreme Court has substantively developed and more clearly defined as required by the controversy before it the aforementioned test enunciated in *Linkletter*. In Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (June, 1966) the Supreme Court rejected retroactive applicability for the criminal procedural rules it had announced in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (June, 1964) and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (June, 1966). It is clear that the Supreme Court can in the interest of justice make a rule non-retroactive where the exigencies of the particular situation require this result; and, in making this determination, it can consider such factors as the purpose of the newly enunciated standard, the governmental reliance which may have been placed upon prior decisions on the subject, and the effect on the administration of justice of a retroactive application of the particular rule. Johnson v. New Jersey, supra, 384 U.S. at 726–727, 86 S.Ct. 1772. In Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453, the Supreme Court declined to give retroactive effect to Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), which forbade prosecutors and judges to comment adversely on the failure of a defendant to testify in a state criminal trial. In Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L. Ed.2d 1199 (June, 1967) the Supreme Court, applying the threefold criteria more specifically enunciated in *Johnson*, 388 U.S. at 297, 87 S.Ct. 1967, denied retroactive application to United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (June, 1967) and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (June, 1967). *Wade* and *Gilbert* announced rules that will serve to prevent law enforcement officers from exhibiting an accused to witnesses prior to trial and for purposes of identification without benefit of counsel or at least notice to counsel. As *Wade* and *Gilbert* touch upon right to counsel, so must *Stovall* represent a sure-footed application of the three-fold criteria for retroactivity explicated in *Johnson*. Stovall v. Denno, supra, 388 U.S. at 296–297, 87 S.Ct. 1967. A Fourteenth Amendment right to counsel has been recognized not infrequently by the United States Supreme Court as one deserving of retroactive application. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (right to counsel during trial); Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (right to counsel during a particularly critical stage of pretrial prosecutorial proceedings); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (the right to counsel on appeal) 388 U.S. at 297, 87 S.Ct. 1967. See also: White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193, applied retroactively in Arsenault v. Massachusetts, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (October, 1968). Other principles of criminal procedure, principles that manifestly and scientifically reach and affect the fairness of the trial itself, are under rule of decision entitled to retroactive application. These include the inadmissibility of an illegal and involuntary confession. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205; the continuing availability of a substantive constitutional right notwithstanding a long enforced but ineffective waiver thereof, Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837; the general right to confront and cross-examine adverse witnesses whose hearsay testimony is used and the witness is not made available by the state though the state through diligence might otherwise have done so. Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (April, 1968); Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (January, 1969). These case authorities, however, essentially confirm rather than at-

tenuate the fact that the United States Supreme Court is consistently applying the three-fold criteria of *Johnson* and *Stovall* as adumbrated by *Linkletter* in the area of retroactivity. The principles that the states cannot deny a request for a jury trial in serious criminal cases, Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (May, 1968), and that the right to jury trials extends to trials for serious criminal contempts, Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (May, 1968), have been denied retroactive application. DeStefano v. Woods, 392 U.S. 631, 88 S. Ct. 2093, 20 L.Ed.2d 1308 (June, 1968), citing Stovall v. Denno, 388 U.S. at 297, 87 S.Ct. 1967. These are familiar and inviolate federal Bill of Rights guarantees; but they patently do not meet the test of *Johnson* and *Stovall* for retroactive federal court enforcement in state cases.

From the foregoing there seems little doubt if any that *Aguilar* can be applied prospectively only. I so hold. Like *Linkletter* it involves the Fourth Amendment principle which protects privacy and purports to control police conduct. Unlike *Mapp,* it goes beyond in terms of gradual refinement the exclusionary rule forbidding in the general sense unreasonable searches and seizures. *Aguilar* more particularly relates to the sufficiency of a sworn affidavit to support the Fourth Amendment requirement of probable cause for an arrest or search. Certainly in this case, as in *Linkletter,* and most other conceivable pertinent situations, the evidence in question is otherwise relevant and reliable. 381 U.S. at 639, 85 S.Ct. 1731. Prior to *Aguilar* there was no specific decision that a uniform law of the land would reach down into state trials involving sufficiency of affidavits to support probable cause. As in *Mapp* there was enormous state reliance on federal non-intervention in this area emanating from the doctrine of Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782. The disruption which retroactive application could cause is clear. This is

particularly so if *Aguilar* were permitted to reach back to the date of *Mapp.*

The United States Court of Appeals for the Fifth Circuit, without having to squarely determine the issue, has strongly intimated that *Aguilar* is not for retroactive application. Davis v. Beto, 5 Cir., 368 F.2d 999 (Nov., 1966); Flores v. Beto, 5 Cir., 374 F.2d 225 (March, 1967). Compare: Doby v. Beto, 5 Cir., 371 F.2d 111 (Jan., 1967). These decisions were made without referenced consideration of *Johnson* and prior to the announcement of *Stovall.* It is the interpretative judgment of this Court that *Johnson* and *Stovall* state the general rule as to the chronological applicability of new criminal procedural rules of constitutional dimension that are not retroactive. This is that they are effective as of the date they are formally announced by the United States Supreme Court and relate to the date of the original trial of the state criminal case that is being attacked.

*Linkletter* and *Tehan* may and have been distinguished wherein they permitted the accused to bring on his attack at any time prior to the full completion of the appellate process of which he availed himself. 381 U.S. at 622, footnote 5, 85 S.Ct. 1731. "Decisions prior to *Linkletter* and *Tehan* had already established without discussion that *Mapp* and *Griffin* applied to cases still on direct appeal at the time they were announced. See 381 U.S., at 622 and n. 4, 85 S.Ct., at 1237; 382 U.S., at 409, n. 3, 86 S.Ct., at 461." Johnson v. New Jersey, 384 U.S., at 732, 86 S.Ct., at 1780. See also: O'Connor v. Ohio, 385 U.S. 92, 87 S.Ct. 252, 17 L.Ed.2d 189 (November, 1966).

*Linkletter specifically rejected the suggestion that the operative date should be the date of the search rather than that of the United States Supreme Court decision announcing its unconstitutionality, 381 U.S. at 639, 85 S.Ct. 1731, and the subsequent United States Supreme Court authorities hereinabove cited have not deviated from this view. It is dispositive here, in view of the*

*close time differential involved, of the applicability of Aguilar.*

## II.

The foregoing treatment of the *Aguilar* question is thought necessary by the Court to a full and proper consideration of the consent-search issue which is joined by the parties, as well as the confrontation issue to which this opinion will later advert.

The United States Supreme Court has recently pronounced upon the consent-search issue in the case of Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (June, 1968). *Bumper,* unlike instant case, came up by writ of certiorari for direct review rather than, as here, collaterally by writ of habeas corpus. Title 28, U.S.C.A., Section 2241 et seq. *The significance of this is, of course, that in Bumper the proceedings were criminal in nature and thus the burden of proof was at all material times upon the prosecution. It requires no citation of authorities to state that an application for writ of habeas corpus is a civil proceeding and the general burden of proof is on the applicant.*

This Court reads the rule of decision in *Bumper* to be as stated in that opinion at 391 U.S. 548–549, 88 S.Ct. 1792:

> "When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority."

This factual question was effectively litigated in the state trial and appeal of instant case. 390 S.W.2d at 762. S/F, p. 691. There is no complaint here that the trial court in instant case erred, jurisdictionally or otherwise, in its admission of testimony or charge to the jury on the issue of a consent-search. Petitioner did not testify at the trial. In this proceeding, through able retained counsel, Petitioner has declined to offer testimony on this or any other issue at the fullest evidentiary opportunity available in this Court. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770. Petitioner, through able retained counsel, has entirely elected to rely upon the record.

In *Bumper* the party allegedly giving the consent had testified at some length on the issue. It was, indeed, upon the testimony of this witness that the state trial court in *Bumper* had made its determination of consent. 391 U.S. 548 n. 9, 88 S.Ct. 1788. This determination of this issue was made on a motion to suppress. It was made upon what must be regarded as directly contested and controverted testimony.

This Court is unable to say whether the absence of directly controverting testimony on this issue was or was not a factor in Petitioner's not pursuing writ of certiorari as part of the appellate process in this case.

In *Bumper* the party in question was a 66 year old Negro widow of patently limited education who was neither suspect at the time nor an eventual defendant in the criminal proceedings. Petitioner here was himself a lawyer with extensive experience in criminal law and its practical realities. While this is not necessarily a controlling distinction here, it is a circumstance. It lends weight to the uncontradicted testimony of officer Hodges, to wit:

"  *  *  *  Mr. Hoover told me a search warrant was unnecessary, to come on in and look anywhere I pleased." (S/F p. 673).

On *voir dire* by the defense:

"Q. And after you told him you had a warrant to search his home, what did he say?

A. He said a search warrant is unnecessary, come on in." (S/F p. 676)

"Q. Did you show it (the warrant) to him?

A. I had it in my hand. I don't know whether he saw it or not.

He said a search warrant was unnecessary, to come on in.

A. I gave Mr. Hoover the warrant after I stepped through the door.

Q. And he read the search warrant?

A. Yes. He said something like let me see what you are looking for.

Q. And he read the search warrant?

A. Yes sir." (S/F pp. 682–683).

This testimonially uncontradicted evidence tends to establish that Petitioner not only consented to the search but even invited it. The Texas Court of Criminal Appeals found that there was invitation to search. 390 S. W.2d at 762. This finding of fact is entitled to great weight here. See also: The trial court's ruling on the issue, S/F, 691, rendered after a hearing outside the presence of the jury. S/F pp. 671–692. Compare: Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205.

Unlike Petitioner, Petitioner's wife did testify at the trial. (S/F pp. 890–934.) But she was neither asked nor did she offer testimony controverting that of Officer Hodges concerning the search.

It is evident that Officer Hodges' testimony withstood cross-examination. It was even strengthened on cross-examination.

During the course of the trial Petitioner elected to call to the witness stand a number of other peace officers. There is nothing in their testimony to impeach that of Officer Hodges on this issue of consent-search. It appears from the record that Petitioner did not attempt to develop testimony on this issue by this means.

It is familiar habeas law that waiver of a constitutional right cannot be presumed from a silent record. Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70. However the burden of proof is viewed here, it is impossible to infer a rebuttal of Respondent's emphatic *prima facie* case on what is for Petitioner a testimonially silent and circumstantially inadequate record.

*Bumper* does not eliminate the legality of a search based upon consent. Nor is a state appellate court's determination of a federal constitutional question of law binding upon a federal habeas court. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469. The amendments in the year 1966 of Section 2244 and Section 2254 of the federal habeas corpus act, Title 28, U.S.C.A., Section 2241 et seq., have been construed together, in *pari materia*, as adding provisions to that statute for a qualified application of the doctrine of res adjudicata. Johnson v. Florida, D.C., 283 F.Supp. 494, 497, citing 3 U.S.Cong. and Adm.News, pp. 3663, 3664 (1966). This Court is well aware that strict res adjudicata has never properly applied in the area of federal habeas corpus. See, in general: Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837. Nor is such a strict application proposed, or necessary, here.

Section 2244(c), as amended in 1966, dealing directly with finality of determination for purposes of habeas corpus, is clearly contemplating direct, as opposed to merely collateral, action finality where it states, *inter alia,*

"* * * a prior judgment of the Supreme Court of the United States on an appeal or review by writ of certiorari at the instance of the prisoner of the decision of such State court, shall be conclusive as to all issues of fact or law with respect to an asserted denial of a Federal right which constitutes ground for discharge in a habeas corpus proceeding, actually adjudicated by the Supreme Court therein, * * *."

This Court is not persuaded that Section 2254(d), as amended in 1966, is concerned solely with state collateral proceedings in all circumstances where it states:

"(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a per-

son in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the fact finding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous."

The record does not disclose that Petitioner appealed to or sought writ of certiorari from the United States Supreme Court within the strict meaning of Section 2244, as amended. It is abundantly clear that Petitioner has not remotely shown the existence of any of the eight (8) circumstances set out in Section 2254, as amended in 1966, *as the full record before this Court, including the direct action, is considered.*

It is only appropriate to invoke the criteria enumerated in Section 2254(d), as amended. Petitioner, as a matter of judicial knowledge by this Court, has insistently relied upon the factual record developed in the state trial to sustain his habeas contentions. The state convicting court, where Petitioner had his available state habeas corpus remedy under Article 11.07, as amended, Texas Rules of Criminal Procedure, has provided the record with its written judgment denying relief and reason therefor. Under the circumstances of this case this written statement by the state habeas court necessarily refers to and even incorporates the only, albeit fully abundant, evidentiary basis upon which Petitioner has elected to rely. (See: No. 110,498–A in the 178th District Court of Harris County, Texas, dated April 19,

1968 and, in general, Petitioners Exhibit D, pages 33–37 of this Petition.)

In the twilight area between the vast habeas corpus powers of a federal district court, Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770; Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L. Ed.2d 837, and the Congressional command of judicial finality and comity between sovereigns implicit in the federal statute, 28 U.S.C.A., Sections 2244 and 2254, as amended in 1966, there arises the burden of the Petitioner and the duty of his counsel.

Here the consent-search issue was determined by a state court of competent jurisdiction in the direct action. *Bumper* is concerned with the quantum of proof brought forth by the prosecution. The record contains no direct testimonial contradiction of the prosecution's claim of consent and proof hereon. Petitioner has declined to offer altogether his testimony on the issue. The Court is unable to, and does not, infer lack of consent from the record as a whole.

■■ The Petitioner has not met his burden of proof *in this proceeding* to demonstrate lack of consent.

Petitioner has not met his burden of persuasion here in light of the *prima facie* case made by Respondent in the record. There is substantial evidence to support the finding of consent. This finding is supported by a preponderance of the evidence of record. I so find and hold.

■ Further, to the extent that *Bumper* renders more strict the requirements of a consent-search or elevates the violation thereof to constitutional dimension, the Court is of the considered opinion that the principle is not retroactive. The jurisprudential reasons for the Court's conclusion on this point are more fully stated in the Court's previous discussion of the retroactivity issue, supra.

### III.

The Sixth Amendment right to confront adverse witnesses is now a due process of law guarantee in state prosecutions under the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (April 5, 1965); Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (April 5, 1965); Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (April 18, 1966). Whether the general confrontation principle is to be accorded retroactive application in all conditions and circumstances remains an open question yet to be finally and fully resolved. See and compare: Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L. Ed.2d 255 (April, 1968); Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (June, 1968); Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (January, 1969).

Where there has been in fact and in law an abridgment of this right in the constitutional sense it is not curable by purportedly limiting instructions to the jury by the trial judge. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (May, 1968); Roberts v. Russell, supra. It is significant, however, that these cases, unlike the one at bar, involved joint trials. In *Bruton*, and presumably in *Roberts*, the codefendant whose confession was introduced exercised his privilege not to testify and thereby precluded the other defendant's general right to confrontation. Petitioner here had a separate trial. The evidence here was not admitted in the proceeding proper to prove the guilt of the confessor, Calvin Sellars. It was admitted to prove up the primary offense of robbery by firearms without which the accomplice charge could not stand. See: Bruton v. United States, supra, at 131–132, 88 S.Ct. 1620, and the discussion there of severance and the avoidance of joint trials where the prejudice in question is likely to occur. See also and compare footnote 3 in *Bruton* where it is observed, 391 U.S., at 128, 88 S.Ct., at 1624:

"There is not before us, therefore, any recognized exception to the hearsay rule insofar as petitioner is concerned

and we intimate no view whatever that such exceptions necessarily raise questions under the Confrontation Clause. See Pointer v. Texas, 380 U. S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923; Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255, * * *."

In Barber v. Page, supra, and in Berger v. California, supra, the witnesses in question were not physically available for confrontation and cross-examination by the defendant and the prosecution had not shown good cause or due diligence relative to their unavailability. *Berger*, referring to *Barber* which it held to be retroactive, points out that *Pointer* had been announced more than a year before; and that reliance on previous standards, see Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L. Ed.2d 1199, was not in these circumstances a persuasive argument. Berger v. California, 393 U.S. at 315, 89 S.Ct. 540, 21 L.Ed.2d 508. *In instant case, by Petitioner's own pleading, as manifest in the record and as an undisputed fact, the witness in question, Calvin Sellars, was physically available.* He had in fact appeared during the trial for purposes of identification. He was located in the county jail of Harris County, Texas where this case was tried. His personal appearance was presumptively at all times material as susceptible to the legal processes of the defendant as to those of the prosecution. The significance of this distinguishing fact will be shown later herein.

The general constitutional right to confrontation of adverse witnesses is fundamentally in legal contemplation the common-law evidential rule against the admissibility of hearsay testimony. This rule of evidence purports to guarantee the right to cross-examine the adverse witness and to generally subject that witness to the personal observation of the triers of fact for evaluation of the credibility of the witness. It is equally fundamental, however, that there are a number of specified and deeply established exceptions to the rule against hearsay that have evolved across the generations. 5 Wigmore, Evidence, Sections 1420–1427 (3rd ed. 1940); See also the discussion in Barber v. Page, supra, at 721–722. One of these exceptions is the extra judicial admission of a co-conspirator. In 4 Wigmore, Evidence, Section 1079 (3rd ed. 1940) pp. 127–133, it is stated, *inter alia*,

"A conspiracy makes each conspirator liable under the criminal law for the acts of every other conspirator done in the pursuance of the conspiracy. Consequently, * * * the admissions of a co-conspirator may be used to affect the proof against the others, on the same conditions as his acts when used to create their legal liability.

The tests therefore are the same, whether that which is offered is the act or the admission of the co-conspirator; in other words the question is purely one of criminal law * * * and its solution is not to be sought in any principle of Evidence.

In certain aspects, however, the rules of Evidence sometimes come to be involved, and a few discriminations must be noted:

(c) That the confession of a principal is admissible, on the trial of the accessory, to evidence the commission of the crime by the principal, seems clear on the present principle, supposing some evidence of the defendant's cooperation to be first furnished."

This is the exception which this Court in this case must evaluate in terms of federal constitutionality.

In the illuminating opinion in Evans v. Dutton, 5 Cir., 400 F.2d 826 (September, 1968), the task facing federal courts in this area is clearly stated:

"* * * The enforcement of the confrontation clause against the states now requires the application of a none-too-concrete standard to state hearsay rules which have experienced a various and even erratic evolution. Thus the duty of this court is not only to interpret the framers' original con-

cept in light of historical developments, but also to translate into due-process terms the constitutional boundaries of the hearsay rule." 400 F.2d at 829.

Material testimony by Officer Stone to which objection is made:

The record reveals that after his apprehension Calvin Sellars related to Officer Stone orally the entire episode as he was involved in it. Officer Stone's testimony before the jury on this point is found in the Statement of Facts between pages 534 and 565.

Objection is made to some seven instances in which Officer Stone refers to Petitioner in relating the confession of Calvin Sellars.

Prior to reaching the substance of Calvin Sellars' confession for consideration by the jury, the trial judge made two independent protective rulings. One was that the oral confession would be allowed *in toto* only if that part implicating Petitioner were so hopelessly intwined in the whole text as not to permit a deletion without confusing or obscuring the substance of the confession. The record indicates that there had been such protective deletions in other instances in the trial. In the event the hearsay had to be admitted in order to render coherent the testimony as a whole, such hearsay would be made the subject of limiting instructions to the jury. After full deliberation on this question, the trial court determined that the remedy would be in limiting instructions. Further, upon motion of the defense, the trial court ruled that Petitioner was entitled to a separate hearing outside the presence of the jury to determine the voluntariness of Calvin Sellars' oral confession to Officer Stone. See the Statement of Facts, pages 401–424. Thus did the trial court carefully observe the principle announced in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205. The record reveals that full opportunity was granted Petitioner to develop testimony on the voluntariness issue.

In reviewing Officer Stone's testimony before the jury directly relating the oral confession (S/F, pp. 534–547) it is clear that the references to Petitioner did not form the major portion of the confession. The major portion of the confession related to the preparation and execution of the primary offense by the principals. Only once on this direct examination did the prosecution invoke the name of Petitioner in a specific interrogatory. (S/F, p. 545, line 7.) This was well after Petitioner had been previously mentioned. The record reveals that there was no specific objection by the defense to this particular interrogatory at that time.

On re-direct examination of Officer Stone (S/F, pp. 556–564) there was no further oral reference to Petitioner before the jury.

This Court finds it unnecessary to conclude as a dispositive issue here that the conspiracy was concluded at the time Sellars made his oral statement to Stone in his mother's residence. The primary offense was robbery. Compare: Fiswick v. United States, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196, where there were no limiting instructions by the trial judge and the hearsay confession was expressly admitted as substantive evidence against nonconfessor co-defendants.

It was, of course, necessary for the prosecution to prove the primary offense of robbery in order to reach the accomplice issue under which Petitioner was being immediately tried. Considering the limiting instructions, this was the basis for admitting the evidence.

Petitioner's original brief on appeal, revealed by the record to have been filed with the Texas Court of Criminal Appeals on March 15, 1965, contained no objection concerning any violation of the rule against hearsay in connection with the testimony of Officer Stone. The opinion in Hoover v. Texas, 390 S.W.2d 758, was handed down on April 21, 1965. *Pointer* was announced on April 5, 1965.

Only on Petitioner's brief on motion for rehearing, revealed by the record to have been filed with the Texas Court of Criminal Appeals on May 6, 1965, did Petitioner undertake to join the general confrontation issue.

The testimony developed at the trial was voluminous. The core of the case against Petitioner was the amply corroborated testimony of the co-indictee, Samuel Spivey, who turned state's evidence and escaped prosecution. S/F, 567–628.

■ In all of the circumstances of this case I further find the questioned testimony of Officer Stone to be constitutionally harmless, Chapman v. California, 386 U.S. 18, 23–24, 87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065, as well as constitutionally valid. Officer Stone's testimony as a whole was primarily and necessarily concerned with establishing the alleged primary offense of a multi-party robbery by firearms. Its implication of Petitioner as an accomplice was both incidental to his narrative of the primary offense and merely cumulative of other and amply corroborating evidence. I expressly find that the objected to testimony of Officer Stone was, beyond a reasonable doubt, harmless to Petitioner.

I conclude in all of the circumstances of this case that the admission of Officer Stone's testimony, as an exception to the hearsay rule in state law and practice then, did no violence to Petitioner's federal constitutional rights.

This Court is unable to say that the admission of Officer Stone's testimony *at the time of the trial* was not based upon adequate state grounds. Of course, " * * * dismissal on the basis of an adequate state ground would not end this case; petitioner might still pursue vindication of his federal claim in a federal habeas corpus proceeding * * *." Henry v. Mississippi, 379 U.S. 443, 452, 85 S.Ct. 564, 670, 13 L.Ed.2d 408. But adequate state grounds at the time of the trial would clearly seem to be a factor in the formula set out in Evans v. Dutton, supra, in treating this issue. The injection of federal constitutional dimension into the question came later with *Pointer*.

Petitioner's trial counsel in his objection to Officer Stone's testimony containing the admissions of Sellars stated that he was forbidden by state law from calling that co-indictee as a witness. Counsel does not argue that the state trial court forbade him to do so. Nor does he urge upon this Court the factual contention that he attempted to do so. The legal possibility remains altogether open that Petitioner's trial counsel would have been permitted to bring on the otherwise physically available Sellars to cross-examine him as to his supposed testimony that was legally hearsay at the trial. *For purposes of cross-examination Sellars may well have been producible as an adverse witness. 5 Wigmore, Evidence, Section 1427 (3 ed. 1940) But counsel's conduct of the trial did not put these possibilities, which would clearly subserve the constitutional command of confrontation, to a test. Nor does he contend here that the enforcement of any state statute operated to deny Petitioner the right to cross-examine.*

In the later case of Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (June, 1967) the Supreme Court of the United States voided a murder conviction wherein the state trial court refused to permit the defense to call a co-defendant in reliance on then operative state criminal procedural statutes that in general denied this right to the defense but granted it to the prosecution. 388 U.S. at 16–17, n. 4, 87 S.Ct. 1920. *Washington* turned on the constitutional right to compulsory process for obtaining material witnesses. *This issue might well have been joined in the trial of instant case. The Court must assume that as a matter of trial strategy it was not.*

For the foregoing reasons the Petition for Writ of Habeas Corpus should be, and is hereby, denied.

The foregoing constitutes Findings of Fact and Conclusions of Law. This is and constitutes a final judgment herein.

The Clerk will notify counsel.

## ON PETITIONER'S MOTION FOR CERTIFICATE OF PROBABLE CAUSE:

### IV.

In the recent case of Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (June 2, 1969), the United States Supreme Court applied the "harmless error" doctrine of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065 in a state criminal trial involving incidental and cumulative confession hearsay that was otherwise the subject of limiting instructions by the trial court. The circumstances in *Harrington* were patently less compelling of this result than those that exist here. It was a joint criminal trial and therefore directly involved the doctrine announced in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, concerning the Confrontation Clause. There, as here, the evidence of record against the accused was manifest and even overwhelming-a circumstance which may be deemed persuasive although certainly not dispositive where a constitutional right is involved. 395 U.S. at 254, 89 S.Ct. 1726. In *Harrington*, as here, there were other confessions introduced with limiting instructions. In *Harrington* one of the codefendants actually testified and was subjected to cross-examination by the codefendant Harrington's trial counsel. Here, of course, the co-indictee, Samuel Spivey, testified as a state's witness at the separate trial and was subject to the most searching cross-examination desired by Petitioner's trial counsel. *Harrington* was followed in Neal v. United States, 9 Cir., 415 F.2d 599 (August 13, 1969) even though the other codefendant-confessor in the joint trial declined to testify and was not cross-examined.

The United States Court of Appeals for the Fifth Circuit in United States v. Cohen et al., 5 Cir., 418 F.2d 68 (October 30, 1969), treated the question of testimony that was technically hearsay but which was otherwise " * * * secondary and incidental to * * * admissible rebuttal evidence." Viewing the technical hearsay as substantive evidence rather than as limited to impeachment purposes, and thus assuming error only *arguendo,* the Court of Appeals found the hearsay in question "harmless" although there were no limiting instructions below and none requested and the case was on direct review. Indeed, without reaching a Confrontation Clause issue, the Court of Appeals for the Fifth Circuit has adopted the definition of technical hearsay as being " * * * a statement made by an unavailable declarant and offered for the truth of the matter in the statement." Davis v. United States, 5 Cir., 411 F.2d 1126, 1127 (May, 1969), citing and quoting Brown v. United States, 5 Cir., 403 F.2d 489, 491. Under this traditional definition of technical hearsay, legally as well as rhetorically, the door would seem clearly open to curative instructions in an appropriate case. See also: Campbell v. United States, 6 Cir., 415 F.2d 356, for the proposition intimated in Bruton, 391 U.S. at 128, n. 3, 88 S.Ct. 1620, and now established in *Harrington,* that technical hearsay will not necessarily present a Confrontation Clause issue.

The "harmless error" of *Harrington* applies to instant case with its extensive record replete with manifest proof heretofore dwelt upon. It is dispositive of the Confrontation Clause issue presented here.

Moreover, *Harrington* strengthens the conviction of this Court, and its conclusion if such a conclusion is required here, that the general confrontation principle of *Pointer* will not be applied retroactively upon a categorical and indiscriminate basis and that it does not so apply here. *Bruton* is materially distinguishable from *Pointer* as it was also foreshadowed by *Pointer* as well as by

Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205, 391 U.S. at 126–131, 88 S.Ct. 1620.

*Bruton* spelled the end of the authoritative reign of Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), which governed joint criminal trials in federal courts and permitted the introduction of a codefendant's confession inculpating another codefendant in the same trial if its admission into evidence were accompanied by adequate limiting instructions. *Delli Paoli* was announced well in advance of the broad introduction of federal due process procedural standards into state criminal trials fairly signaled in 1961 by Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933, and accorded particular impetus in 1963 by Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733; Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837; and Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770. *Delli Paoli* was addressed to the particular, albeit long time judicially witnessed, procedural context presented by its material facts; its eventual express rejection by *Bruton* is likewise addressed and limited to its circumstances. The subsequent grant to *Bruton* of retroactivity and of applicability in state cases, Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100, does not enlarge the scope of the substantive rule announced by it.

The recent and heretofore cited United States Supreme Court authorities make it clear that fundamental fairness, in a particular case and in the administration of justice, does not always require and oftimes will not permit *ex post facto* application of a newly evolved procedural rule importing federal guarantee. The functional tests already established by the United States Supreme Court in this nascent and vital area are clearly possessed of becoming fairness, firmness, and flexibility. Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, and related decisional authorities cited in the main opinion herein. A confession prior to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974, 18 L.Ed.2d 1199, although not entitled to retroactive nullification on the basis of the strict *Miranda* criteria, can still be considered on habeas in light of *Miranda* on the general issue of voluntariness and fundamental fairness. Johnson v. New Jersey, 384 U.S. 719, 730, 86 S.Ct. 1772, 16 L.Ed.2d 882; Davis v. North Carolina, 384 U.S. 737, 740–741, 86 S.Ct. 1761, 16 L.Ed.2d 895. The possibilities of technical hearsay in non-*Bruton* situations prior to *Pointer* are varied and multifarious in a singular degree. In the greater likelihood, as here, the questioned evidence will be secondary, incidental, cumulative, harmless, and even subject at the trial to limiting instructions. It may well be in its entirety within a recognized exception. Campbell v. United States, 6 Cir., 415 F.2d 356. The general confrontation principle of *Pointer* may, as here, be considered as applied to the merits of a prior state case with a view to ascertaining and assuring fundamental fairness at the trial. But *Pointer* entered upon the state scene on a mandatory basis without discernible presaging notice, Pointer v. Texas, 380 U.S. at 406, 85 S.Ct. 1065, 13 L.Ed.2d 923, save what might in conjecture follow from the then recent authority of Gideon v. Wainwright, supra, 380 U.S. at 401, 85 S.Ct. 1065.

The Confrontation Clause principle of *Pointer* does not apply to the merits of instant case. All the less could it do so on a retroactive basis.

For the reasons stated above and heretofore, I decline to issue certificate of probable cause. Title 28, U.S.C.A., Section 2253. Petitioner's motion for certificate of probable cause is denied.

The Clerk will notify counsel.