**STATE of Missouri, Respondent,**

v.

**Lee Vernon WARREN, Appellant.**

**No. 54753.**

Supreme Court of Missouri,
Division No. 1.

March 9, 1970.

John C. Danforth, Atty. Gen., Michael L. Boicourt, Asst. Atty. Gen., Jefferson City, for respondent.

John D. Flynn, St. Louis, for appellant.

HIGGINS, Commissioner.

Appeal from denial, after hearing, of motion to set aside and vacate judgment of conviction of murder, first degree, imposed on plea of guilty. Criminal Rule 27.26, V.A.M.R.

On July 9, 1968, Lee Vernon Warren, with his court-appointed attorney, Robert H. Wendt, pleaded guilty to a charge of murder, first degree, a charge of arson, and two charges of burglary, second degree, and was sentenced to concurrent terms of imprisonment for life in the murder case, two years in the arson case, and two years in each of the burglary cases. He has been credited with service of the terms of imprisonment in the arson and burglary cases; and in this proceeding, instituted February 13, 1969, he seeks to have the murder conviction vacated and set aside on the grounds his plea of guilty resulted from ineffective assistance of counsel and coercion.[1]

Appellant's charge of ineffective assistance of counsel is that under his cited authorities [2], he was entitled to have counsel to investigate all defenses of fact and law and to offer evidence and witnesses favorable to him and to object to any offered evidence which was illegally obtained. He contends these were denied him and he was thereby the victim of ineffective assistance of counsel in that he intended to take the stand and rely on a defense of self-defense but his attorneys failed to locate a witness to that effect which they should reasonably have been able to do. In making this contention appellant does not question counsels' professional or educational qualifications. His other contention is that he was a "borderline mental

1. His motion also alleged undue delay between arrest and arraignment as a ground for relief but such has been abandoned by failure to present it to the trial court and to brief it on appeal.

2. People v. Ibarra, 60 Cal.2d 460, 386 P.2d 487, 490 [4], 34 Cal.Rptr. 863; Goodwin v. Swenson, D.C.W.D.Mo., 287 F.Supp. 166, 176 [4]; State of Montana v. Tomich, 9 Cir., 332 F.2d 987, 989 [5]; Jones v. Huff, 80 U.S.App.D.C. 254, 152 F.2d 14, 15; Malinski v. New York, 324 U.S. 401, 416, 65 S.Ct. 781, 89 L.Ed. 1029; Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, and 74 A.L.R.2d 1390.

case" and his presence in that condition during plea negotiations, coupled with the presence in court of evidence bags containing exhibits amounted to coercion which produced his plea of guilty.

These contentions were denied by findings made May 21, 1968, after full evidentiary hearing accorded by the same judge who presided at appellant's partial jury trial and took his pleas of guilty.

An indictment filed February 28, 1967, charged that on January 28, 1967, Lee Vernon Warren feloniously, willfully, deliberately, premeditatedly, and of his malice aforethought made an assault with a hammer on George Butler Bannister and thus inflicted mortal wounds and injuries from which George Butler Bannister died. On March 3, 1967, he was present in court with "Attorney George Hubel" and pleaded not guilty. Eugene J. Gabianelli was appointed attorney for Lee Vernon Warren and served as counsel until June 21, 1968, when he was permitted to withdraw, and Robert Wendt was appointed.

Mr. Gabianelli, during his service as counsel, moved March 22, 1967, for a bill of particulars which was denied March 29, 1967, and moved March 27, 1967, for examination and report on his client's mental condition and fitness to proceed under Sections 552.020 and 552.080, V.A.M.S., which was ordered March 29, 1967, to be accorded defendant at Fulton State Hospital. On December 26, 1967, while at Fulton State Hospital, defendant prepared a petition for writ of habeas corpus alleging he was not in need of hospitalization. He forwarded the petition to Mr. Gabianelli with direction to file it, which Mr. Gabianelli did. The petition was denied December 29, 1967, and, on January 26, 1968, the medical report was received, and the cause was removed from the medical examination docket and set for trial for February 26, 1968. On January 31, 1968, Mr. Gabianelli again moved for medical examination by a physician of his client's choosing. The motion was granted February 7, 1968. On February 2, 1968, Mr. Gabianelli moved to take depositions of en-

dorsed witnesses, at state expense, which was denied February 7, 1968; and, on February 26, 1968, moved for continuance pending taking of depositions at counsel's own expense and to obtain the mental examination by private physician authorized February 7, 1968. The cause was continued to April 8, 1968, and, on March 19, 1968, Mr. Gabianelli secured the transfer of his client to Malcolm Bliss Hospital for psychiatric examination by Dr. Robert Woodruff. On April 8, 1968, defendant and counsel moved for continuance and the cause was continued to May 17, 1968, and further to July 8, 1968, at which time jury trial commenced before Judge Walsh with defendant represented by Mr. Wendt.

At the outset of trial Mr. Wendt, on behalf of defendant, moved to rely on the defense of mental disease or defect excluding responsibility. The court denied the defense and the colloquy between court and counsel at that time shows that psychiatrists at Fulton State Hospital by report of January 24, 1968, found defendant to have no mental disease or defect within the meaning of Section 552.010, and that the psychiatrist at Malcolm Bliss Hospital, by report of March 28, 1968, found defendant mentally competent to stand trial and had no mental disease or defect which would exclude responsibility. Trial resumed and the state adduced testimony from four of its witnesses, after which, on the second day of trial, July 9, 1968, a recess was requested and Mr. Wendt announced his client's wish to withdraw his not guilty plea and enter a plea of guilty. The plea of guilty was entered by counsel and acknowledged by defendant. The prosecuting attorney, upon request of the court, recited that state's evidence taken and yet to be adduced would have shown that defendant and the deceased had been acquaintances for some time and that the victim was found beaten to death with his arms tied behind his back and set afire. The court proceeded: "Did you commit those acts? THE DEFENDANT: I did. THE COURT: Have you fully talked over this plea of guilty with your attorney,

Mr. Wendt? THE DEFENDANT: I have. THE COURT: Has he explained to you the importance and the significance of your plea of guilty to this charge? THE DEFENDANT: He has. THE COURT: And do you understand that the range of punishment in this case could run to penalty of death in the gas chamber? THE DEFENDANT: * * * Yes, sir. * * * THE COURT: Have you gone over this very thoroughly now with Mr. Wendt? THE DEFENDANT: Yes, sir." In addition, the court adduced that defendant was 22 years of age, had completed high school at Vashon High School and had been sent by the federal government to St. Marcus, Texas, to study "office occupations, electronics and everything." Continuing— "THE COURT: Now, is this plea of guilty of your own free will? THE DEFENDANT: Yes, it is. THE COURT: Is it made under any promises or any threats, have you been threatened by anybody? THE DEFENDANT: No, I haven't. * * THE COURT: Do you also understand that I can take the recommendation of the Circuit Attorney's office, or I don't have to, it's my judgment to determine what shall be done in this case? Do you understand that? THE DEFENDANT: Yes, I do. THE COURT: Are you entering this plea of guilty solely because you understand the nature of the charge and you understand the facts and that you are guilty of this charge? THE DEFENDANT: Yes."

Following filing of the 27.26 motion February 13, 1969, the transcript of the foregoing proceedings was filed March 12, 1969, John D. Flynn was appointed counsel March 12, 1969, and the evidentiary hearing commenced May 16, 1969, with appellant present with Mr. Flynn.

Lee Vernon Warren had three conferences with Mr. Gabianelli during pendency of his case. He told Mr. Gabianelli of his "idea" to take the stand and testify on self-defense, but Mr. Gabianelli thought more consideration might be gained by attempting a mental defense. He described the occurrences at the apartment of his friend and "fence," George Butler Bannister, at 1:45 in the morning. He arrived at that time and a fight ensued because his friend was engaged in a sex act with one Donald Whitehead, who was defendant's recently acquired partner in homosexual acts. "I was not only angered, it shocked me." He claimed that Bannister struck the first blow and he "upped with a hammer" and began "pecking" on Bannister. Mr. Gabianelli relayed "propositions" of ninety-nine years, fifty years, and thirty-five years in the event a plea of guilty was entered, which he refused. He stated that Mr. Gabianelli made no attempt to confer with him with respect to building a defense on self-defense and lack of premeditation. He said Whitehead was present at the beginning of defendant's fight with Bannister but he did not know if Whitehead was there when he hit Bannister in the head with the hammer. He never saw or heard from Whitehead after the incident. He gave Whitehead's address as he knew it at the time to Mr. Gabianelli. When Mr. Wendt came into the case, he, Mr. Gabianelli, and defendant had a conference. Defendant advised Mr. Wendt of his desire to attempt self-defense but Mr. Wendt also advised him to stay off the witness stand. He conferred with Mr. Wendt three times prior to trial. At the time of trial, he, Mr. Wendt, and Prosecutor Bantle had a conference during which Mr. Bantle voiced his impression that the case was strong enough to result in a death penalty and there was an indication he could "snatch" a life sentence by pleading guilty. His explanation for his plea of guilty was that even though he admitted it was voluntary, he was under pressure, "threats from the Prosecuting Office, threats from him—he gave me all the indications and so forth in his conversation that I wasn't going to get nothing but the gas chamber, and he throwed up my records and my background and so forth." His opinion of Mr. Gabianelli was that it was "like I was the first criminal case he had," and of Mr. Wendt, that he "is Public Defender. I had to cop

a case." He acknowledged that Mr. Wendt secured an acquittal on a murder charge for his stepfather. Defendant's directions to his lawyers for locating Whitehead were "to go to the pool hall, Hockio's Pool Hall up on Sarah, Sarah and Enright." He also stated he could not remember exactly,— "It was on McPherson, the thirty-nine hundred—." He made no attempt to contact Whitehead himself and did not see or hear from him. He complained also of counsel's failure to file a motion to suppress which he typed himself. He acknowledged that the evidence available to the state, which showed deceased's bloody and burned condition, could result in an assessment of the death penalty by the jury.

Eugene J. Gabianelli was licensed as an attorney in May, 1959, and had become a partner in a well-known St. Louis law firm. He had been counsel in five or six criminal cases prior to his appointment to the defense of Lee Vernon Warren. He discussed the case with his office associates and spent "well over a hundred hours" in preparation. He discussed both motions for psychiatric examination with his client and proceeded with his agreement. He had over ten conferences with his client prior to the second examination. His client expressed his wish to have a defense along the line of self-defense and mentioned Whitehead as the witness. He received an address on McPherson from defendant and obtained a telephone number on his own. He attempted several times to reach Whitehead but was unsuccessful, as was defendant's mother whom he enlisted to help locate Whitehead. He did not go personally to the McPherson address. His request to be relieved resulted from difficulty in knowing how his client wanted to proceed. The defense of self-defense was never ruled out and it was never established as a sole defense. The difficulty "was in whether we were going to trial or not * * whether or not Mr. Warren got something which I felt was satisfactory in the way of plea bargaining. He was very much interested in what the State had to say by way of offer." His client was not ada-mantly opposed to a guilty plea. He took depositions of endorsed witnesses at the expense of his firm, prepared several motions in anticipation of trial, and a motion to suppress evidence "which it never became necessary for me to file because of being relieved." He did not think it would have been sustained. Mr. Gabianelli was relieved upon his request due to threats made by his client to have his associates "get" him. He gave Mr. Wendt the benefit of all his preparation. He could not recommend that defendant testify in his own behalf in view of his knowledge of his client and the strong case against him.

Robert H. Wendt was licensed as an attorney in September, 1967. At the time of his appointment, he was an assistant public defender and first met Lee Vernon Warren while representing his father-in-law on a murder charge, and was solicited to represent him after he secured acquittal for the father-in-law. He and Mr. Gabianelli discussed the situation and Mr. Gabianelli freely gave of his preparation and information. He also felt there was a possibility of the death penalty in the event his client stood trial by a jury, and he also followed the line of attempting to secure a mental defense. Despite his own lay feelings concerning his client's mental condition, there was nothing he could obtain by way of expert opinion with which to present such a defense. With respect to attempting to locate Whitehead, "I felt that Mr. Gabianelli had exhausted, done everything he could and to satisfy myself I made one attempt. However,—this is important— after—when I began representing Lee Vernon Warren, he mentioned Donald Whitehead only one time. At this time he was not particularly concerned with the, the trial aspects of the case. He was interested in getting to Fulton. * * * I went over everything that Mr. Gabianelli had accumulated and it was quite voluminous— I think he did an outstanding job of preparing the case for trial—had many consultations with Lee Vernon Warren himself and made notes of my own as to how I planned to proceed at trial." With respect

to a motion to suppress evidence, "there was one in my file and I was going to file it and object to the introduction at the time when that became proper during the course of the trial. That time never arose because the defendant chose to plead guilty prior to that time. * * * I felt * * * the motion had little merit and * * * the rules I am familiar with, it gives the judge the discretion to go ahead and allow the motion to be filed at time of trial, and I honestly was quite hopeful until we actually came to trial that we would not have to go to trial, but I was prepared in the event that we did to file the motion at the time the evidence was attempted to be introduced." Mr. Wendt had been involved in ten or fifteen murder cases and five hundred felony cases. His relationship with his client deteriorated at the time they started picking jurors "as I suspected it would * * * it was apparent then that he was going to have to stand trial and not get to go to Fulton." With respect to alleged "psychological coercion" he told the defendant of the possibility he would go to the gas chamber if he went to trial. He advised that the state had a strong case, "I felt that I had a professional and a moral obligation to explain these things to the defendant." He seemed capable of understanding, was intelligible and oriented, and the plea of guilty was entered at his suggestion. He entered his plea intelligently and understood its consequences. He knew of nothing further either he or Mr. Gabianelli could have done that might have been of assistance to the defense of defendant. The defense of self-defense was discussed by defendant with Mr. Wendt "only secondarily to * * * getting to Fulton." With respect to taking the stand, "he wavered on that. He took different positions on that matter. * * * one time he wanted to take the stand and then he didn't want to take the stand and so forth." There were instances of plea offer prior to trial which were rejected by defendant. All were withdrawn by Mr. Bantle when the trial started and when defendant changed his mind Mr. Wendt had to renew negotiations in defendant's behalf. When the negotiations then took place, Mr. Wendt did not believe there were any threats, promises, or stipulations. He did not feel qualified to render an opinion on psychological coercion. He asked Mr. Bantle to relate the offer of life imprisonment because he thought it would be beneficial if his client knew directly the state's position. Mr. Bantle stated these things "very gently." At the time of the guilty plea, Mr. Wendt felt his client was competent to testify.

Donald Whitehead was absent from the record of the evidentiary hearing and, presumably, if his testimony would have been of value to movant by way of showing a defense of self-defense, he still could not be found by present counsel or by appellant.

Under Rule 27.26, supra, the burden of proving his grounds for relief was on appellant, and this review is limited to determining whether the judgment against him on those grounds is clearly erroneous. Crosswhite v. State, Mo., 426 S.W.2d 67, 70 [1]; Mitchell v. State, Mo., 447 S.W.2d 281, 283, 285.

The evidence available to the court has been stated in detail because it demonstrates, without further exposition, a conflict of evidence on the issues of ineffective assistance of counsel and coerced guilty plea presented by appellant's motion. The trial court resolved such conflicts against appellant and, in the state of this record, it cannot be said that such findings were clearly erroneous.

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

SEILER, P. J., HOLMAN, J., and HENLEY, Alt. J., concur.

STORCKMAN, J., not sitting.